[S. F. No. 22614. In Bank. Feb. 7, 1969.]

MIKE SABELLA, Plaintiff and Respondent, v. SOUTHERN PACIFIC COMPANY, Defendant and Appellant.

312

Louis L. Phelps, Richard H. Bailin, Dunne, Phelps & Mills and Arthur B. Dunne for Defendant and Appellant.

Boccardo, Blum, Lull, Niland, Teerlink & Bell, Edward J. Niland and Stanley A. Ibler, Jr., for Plaintiff and Respondent.

MOSK, J.—Defendant appeals from a judgment in favor of plaintiff under the Federal Employers' Liability Act. The jury brought in a verdict of $115,500, but by remittitur to which plaintiff consented the award was reduced to $80,000. Defendant cites as error the trial court's refusal to admit evidence of a disability pension, and purported misconduct by plaintiff's counsel. We conclude that the judgment must be affirmed.

Plaintiff Mike Sabella was injured while working as a "carman cutter" for defendant railroad. Among other duties, it was his task to cut damaged freight cars into scrap. While doing so, plaintiff fell from the roof of a car he was cutting and sustained severe back injuries. He alleged that his fall was caused by the negligence of defendant's crane operator in moving the roof section, which had been attached to the crane preparatory to lifting the section off, while plaintiff was still walking on it; and by the failure of defendant to provide a reasonably safe place in which to work. The defense was based

on a denial of negligence and an allegation of contributory negligence, which may reduce an F.E.L.A. award.

At the conclusion of the trial, and following the verdict in favor of plaintiff, defendant moved for a new trial on multiple grounds: (1) insufficiency of the evidence; (2) excessive damages; (3) disregard by the jury of the court's instructions as to contributory negligence; (4) error in law in excluding evidence of a disability pension received by plaintiff; and (5) misconduct by plaintiff's counsel. The court made an order finding "That the evidence is insufficient to sustain the verdict of the jury; and [that there] was error in law, occurring at the trial and excepted to by defendant, and that such error was prejudicial. . . ."[1] A new trial was denied, however, on the condition that plaintiff consent to a reduction of the verdict from $115,500 to $80,000. Plaintiff agreed and does not now challenge the propriety of the reduction.

The parties are in accord that the only "error in law" asserted by the defendant, and that undoubtedly referred to by the court, was the exclusion of evidence of plaintiff's disability pension. Arguments as to the propriety of the remittitur in this case cannot, therefore, be premised on an assumption that the trial court also found prejudicial misconduct by plaintiff's attorney. By necessary implication, the allegation of misconduct was rejected by the trial court, and the remittitur was intended solely to rectify the exclusion of the evidence of the pension. We turn, then, to an examination of this alleged error in law and the effect of a remittitur on such error.

During the course of the trial, counsel for plaintiff proposed to read questions and answers concerning plaintiff's condition from a form which had been filled in by Dr. Calvin of the Southern Pacific Hospital. The questions read were as follows: "May applicant's condition be expected to improve?" followed by a check mark against "No"; "Applicant able to work in last occupation?" followed by checks against "At present—No"; "May applicant be able to work in last occupation in the future?" followed by a check against "No"; "Type of work: Limitation to 25 pounds weight lifting, and no climbing or working on moving railroad equipment."

---

[1]This case was tried prior to the passage of Code of Civil Procedure section 657, which now requires a judge to specify his reasons for granting a whole or partial new trial. (See *Mercer* v. *Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315].

Defendant sought to read into evidence other parts of this form and an accompanying letter, which would have revealed that the subject of the form was plaintiff's application to the Railroad Retirement Board for a disability pension. The purpose of such evidence, asserted defendant, would be (1) to show that the report was really based on a subjective evaluation, influenced by the opinion of the doctor that since plaintiff was applying for a disability pension, he probably could not be expected to improve because he did not want or have to go back to work; (2) to explain and identify the whole of the document of which plaintiff read only a part (citing Code Civ. Proc. § 1854, now Evid. Code, § 356); and (3) to counter allegations that defendant had refused plaintiff a job and had generally turned its back on him following his injury.

Plaintiff objected on the ground that *Eichel* v. *New York Central R.R. Co.* (1963) 375 U.S. 253 [11 L.Ed.2d 307, 84 S.Ct. 316], makes such evidence inadmissible. In *Eichel,* also an F.E.L.A. case, evidence was offered of receipt by the petitioner of a Railroad Retirement Act pension, in order to impeach his testimony as to motive for not returning to work and as to the permanence of his injury. The court held that ''it would violate the spirit of the federal statutes'' to admit evidence of such a pension. It reasoned that Railroad Retirement Act benefits may not be considered in mitigation of damages, and there will generally be other evidence of malingering with greater probative value and less likelihood of misuse by the jury. This balance of probative value against prejudicial effect is also the law of this state, now embodied in Evidence Code section 352.

Defendant distinguishes *Eichel* on the ground that here plaintiff had ''opened the door'' to such evidence by himself introducing a portion of the form in question. Defendant analogizes to the cases admitting evidence of insurance coverage where the opposing party has broached the subject or made such evidence necessary to explain or refute counterevidence (see, e.g., *Hatfield* v. *Levy Bros.* (1941) 18 Cal.2d 798 [117 P.2d 841]), and further contends that *Eichel* has been interpreted in such a manner (*Gladden* v. *P. Henderson & Co.* (3d Cir. 1967) 385 F.2d 480, cert.den. 390 U.S. 1013 [20 L.Ed.2d 162, 88 S.Ct. 1262]).

We find it unnecessary to resolve this close question of prejudice and probative value. Upon motion for a new trial, the court obviously decided it should have admitted the evidence in question and proceeded to order the remittitur. In

short, the court deemed that all the evidence, *including* that which it rejected but later determined should have been admitted, was insufficient to support the amount of the award. This in no way suggests that the court considered the evidence insufficient to support *any* award. (*Muench* v. *Gerske* (1934) 139 Cal.App. 438, 443-444 [34 P.2d 198].) Under the circumstances, the remittitur was proper.

Defendant, however, insists that only insufficiency of the evidence can justify a remittitur, and that a prejudicial error in law due to exclusion of relevant evidence, having deprived defendant of a full hearing by the jury on all the evidence, necessarily requires a complete new trial. No authority compels such rule and we find the contention untenable. For example, it has never been held that if evidence of certain medical expenses, relating only to the issue of damages, were wrongfully excluded the court would be forced to order a new trial on all issues. Patently this is impractical and contrary to the purposes of the remittitur procedure. If, as the trial court impliedly found here, the only defect relates to the measure of damages, and if the appropriate amount can be ascertained from the evidence, remittitur is the proper remedy to cure that defect and avoid the necessity of a new trial.[2]

The record supports the conclusion that the error in law here alleged was limited in effect to the question of damages. The issue of liability in this case concerned only the manner in which plaintiff cut the freight car, the actions of the crane operator, and the safety of the working conditions provided by defendant. Clearly the question whether plaintiff in fact had a permanent injury or was simply malingering, the accuracy and manner of the doctors' diagnoses, and the availability of future work for plaintiff relate to none of the above factors of liability, but only to the assessment of damages. There is no allegation that the damages as now reduced are excessive. Consequently both the application and the result of the remittitur in this case were proper, and any error in law that might have occurred was thereby cured.

But, defendant asserts, the excluded evidence might

[2]For purposes of this case we may assume that, as defendant contends, excessive damages resulting from passion or prejudice which might also affect the issue of liability cannot be cured by a remittitur. (See *Minneapolis, St. Paul etc. Ry. Co.* v. *Moquin* (1931) 283 U.S. 520 [75 L.Ed. 1243, 51 S.Ct. 501]; but cf. *Deevy* v. *Tassi* (1942) 21 Cal.2d 109, 120-121 [130 P.2d 389].) However, the court's remittitur does not imply a finding of passion or prejudice. (*Hughes* v. *Hearst Publications, Inc.* (1947) 79 Cal.App.2d 703, 705 [180 P.2d 419].)

also have helped to counter plaintiff's charges—which defendant assigns as misconduct—that defendant unfairly turned its back on him after the accident, and might thus have reduced any passion or prejudice inherent therein. Assuming *arguendo* that the statements in question were both improper and prejudicial, a matter to be discussed below, the remedy was not the insertion of additional prejudicial evidence, attempting in effect to counter error with error. The antidote was a timely objection and request for admonition of the jury, to remove the effect of the wrongful statements. Even more clearly than in *Eichel,* defendant had this less prejudicial means of making its point; as will be seen, it failed to utilize this means and cannot now complain of an inability to mitigate any prejudice that resulted.[3]

We turn now to defendant's second major contention, i.e., that plaintiff's counsel was guilty of prejudicial misconduct. The alleged misconduct consisted, among other things, of repeated references, both direct and indirect, to defendant as "inhuman" and heartless, sending plaintiff "down the tubes" and casting him on the "human trash pile"; as "cheapskates" attempting to put up a "smokescreen" by perjury and deceit, so as to deprive plaintiff of his just due and put the money instead into defendant's "coffers." Reference was also made to the disparity in wealth between plaintiff and defendant, combined with an appeal to the jurors' personal sympathies.[4] It is unnecessary to detail any further the precise language used or to make a phrase-by-phrase comparison between this and other exemplars of mis-

---

[3]Despite the court's exclusion of all evidence of the pension, on those occasions when defendant did object to plaintiff's charges of unfairness defendant attempted to inject this evidence by indirect reference. When plaintiff's counsel made statements referring to defendant's ill treatment of plaintiff, defendant objected and each time alluded to "the offer of proof I made in chambers as to what this man's actual situation was and the election he made," or to "what was done for this man," or employed similar statements. This was improper, especially when used in lieu of a request for an admonition of the jury. (See *Boyd* v. *Theetgee* (1947) 78 Cal.App.2d 346 [177 P.2d 637].) But even if defendant's misconduct could somehow cancel out that of his adversary, plaintiff, like his opponent, failed to object to the remarks in order to preserve the issue for appeal.

[4]In recent years a number of personal injury lawyers have written books suggesting a variety of somewhat deceptive means of eliciting sympathy for litigants appearing before a jury. (See Prosser, 43 Cal. L.Rev. 556 (1955), reviewing Belli, Modern Trials (1954) ; R. M. Mosk, 16 U.C.L.A. L.Rev. 216 (1968), reviewing Appleman, Preparation and Trial (1967).) Such tactics are not part of the repertoire of the ethical professional man.

conduct since it is only the record as a whole, and not specific phrases out of context, that can reveal the nature and effect of such tactics. Upon review of the entire record we conclude that plaintiff's counsel was guilty of deplorable misconduct which might well have been prejudicial. [See fn. 5] However, in view of defendant's failure to take proper steps to preserve the latter issue of prejudice on appeal, we find it unnecessary to reach it on the merits.[5]

Assuming counsel's conduct was both improper and prejudicial, and further assuming for purposes of discussion that such misconduct went to the issue of liability and so could not be cured by remittitur (see fn. 2, *ante*), we examine the record before us in light of the applicable legal principles.

 ''Generally a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished.'' (*Horn* v. *Atchison, T. & S.F. Ry. Co.* (1964) 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561].) '''As the effect of misconduct can ordinarily be removed by an instruction to the jury to disregard it, it is generally essential, in order that such act be reviewed on appeal, that it shall first be called to the attention of the trial court at the time, to give the court an opportunity to so act in the premises, if possible, as to correct the error and avoid a mistrial. Where the action of the court is not thus invoked, the alleged misconduct will not be considered on appeal, if an admonition to the jury would have removed the effect.' '' (*Cope* v. *Davison* (1947) *supra*, 30 Cal.2d at p. 202.) '' 'It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have.' (*Tingley* v. *Times-Mirror Co.*, 151 Cal. 1, 23 [89 P. 1097].) . . . [W]e are aware of no California case wherein a plaintiff's verdict was reversed for misconduct during his counsel's argument in the lack of timely objections and a request that the jury be admonished where such admonition could be effective.'' (*Horn* v. *Atchison, T. & S.F. Ry. Co.* (1964) *supra*, 61 Cal.2d at pp. 610-611.)

[5]In any event, the trial court impliedly found no misconduct, or at least no prejudice, when ruling on the motion for new trial. ''A trial judge is in a better position than an appellate court to determine whether a verdict resulted wholly, or in part, from the asserted misconduct of counsel and his conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly wrong.'' (*Cope* v. *Davison* (1947) 30 Cal.2d 193, 203 [180 P.2d 873, 171 A.L.R. 667].)

This case is neither precisely like *Horn, supra,* in which no objection or request for admonition was made until after conclusion of the closing argument (and relief was thus denied); nor like *Hoffman* v. *Brandt* (1966) 65 Cal.2d 549 [55 Cal.Rptr. 417, 421 P.2d 425], in which an admonition, especially as there given by the trial court, could not have been effective under the circumstances; nor like *Love* v. *Wolf* (1964) 226 Cal.App.2d 378 [38 Cal.Rptr. 183], in which admonition of the jury was requested several times but disregarded by the trial court. Here defendant remained silent as to all but one line of argument, and as to the latter he objected but failed at any time to request an admonition of the jury to disregard the remarks. Under the circumstances we conclude that defendant must be denied relief. (See *Estate of Hart* (1951) 107 Cal.App.2d 60, 70 [236 P.2d 884].)

The record indicates that while plaintiff's counsel accused witnesses of perjury, made reference to defendant's wealth and plaintiff's lack of resources, and appealed, though indirectly, to the jurors to place themselves in plaintiff's position, all of which tactics are improper and to be condemned (see, e.g., *Hoffman* v. *Brandt* (1966) *supra,* 65 Cal.2d 549; *Horn* v. *Atchison, T. & S.F. Ry. Co.* (1964) *supra,* 61 Cal.2d 602; *Love* v. *Wolf* (1964) supra, 226 Cal.App.2d 378), defendant did not once object to such remarks, much less request an admonition to the jury. "In the absence of a timely objection the offended party is deemed to have waived the claim of error through his participation in the atmosphere which produced the claim of prejudice." (*Horn* v. *Atchison, T. & S.F. Ry. Co.* (1964) *supra,* 61 Cal.2d at p. 610.)

Defendant did object, however, to one distinct line of argument by his adversary. As discussed earlier, defendant challenged references to turning its back on plaintiff and refusing to help him or to give him a job and generally being out to defeat his claim. This was, in fact, perhaps the mildest and least prejudicial of the alleged instances of misconduct. Although counsel used improper language, the question of defendant's treatment of plaintiff appears to have been put in issue, at least in part, by defendant when it asserted during opening statement that there was work plaintiff could do on the railroad. However, even assuming that the entire line of argument was misconduct, defendant remained silent when during opening argument plaintiff's counsel at least twice alluded to defendant's denial of a job and of hospitalization to plaintiff, and when during the trial he used such terms as

320

"cheapskates" in referring to defendant. It was not until closing argument, after defendant had attempted to counter the "unfairness" argument with evidence of plaintiff's disability pension (see fn. 3 *supra*), rather than by means of the long established procedure of admonishing the jury,[6] that defendant finally objected, but even at that tardy point counsel did not request an admonition. Certainly as to this particular line of argument an admonition would have been effective, especially if requested at the outset. One of the primary purposes of admonition at the beginning of an improper course of argument is to avoid repetition of the remarks and thus obviate the necessity of a new trial. (*Horn* v. *Atchison, T. & S.F. Ry. Co.* (1964) *supra,* 61 Cal.2d at p. 610.) Except perhaps in cases of highly emotional or inflammatory language or reference to extremely prejudicial circumstances not in evidence, a jury must be deemed capable, if so instructed, of ignoring references to a litigant's personal or corporate virtues and confining itself to the merits of the case. (Compare *Deevy* v. *Tassi* (1942) *supra,* 21 Cal.2d 109, 123, with *People* v. *Kirkes* (1952) 39 Cal.2d 719, 726 [249 P.2d 1].)[7]

Defendant urges us to ignore the rules of procedure relating to the "magic words" of proper objection and admonition. But the procedure outlined above is not a meaningless ritual; it has been designed through judicial experience to prevent by timely words of caution the very problem with which we are here concerned.

We emphasize again that the particular language used by counsel and the form or lack of objection by defendant in this case are not meant to serve as invariable guidelines for future reference. Each case must ultimately rest upon a

[6]Defendant asserts that it did not know at the outset how heavily this line of argument would be emphasized, although during one objection defendant claimed that it had been "anticipating" such an argument and meant to counter it by evidence of the disability pension. Obviously, the fact that this counterevidence was subsequently excluded cannot alone excuse the failure to object if in fact the argument was improper. It was not the exclusion of the pension evidence that determined the propriety of the language and allusions employed by plaintiff's counsel.

[7]Defendant was apparently not unaware of the tactical availability and desirability of an admonition to the jury. When plaintiff attempted to argue damages on a "per diem" basis, defendant objected strenuously and asked for and received an admonition that the jury disregard this line of argument. (As to the propriety of that ruling, see *Beagle* v. *Vasold* (1966) 65 Cal.2d 166 [53 Cal.Rptr. 129, 417 P.2d 673].) It is significant that far more questionable statements made at the same time, which defendant now cites as misconduct, were not alluded to in the "per diem" objection.

court's view of the overall record, taking into account such factors, inter alia, as the nature and seriousness of the remarks and misconduct, the general atmosphere, including the judge's control,[8] of the trial, the likelihood of prejudicing the jury, and the efficacy of objection or admonition under all the circumstances.

Our conclusions should in no way be interpreted as condoning the deplorable conduct of plaintiff's counsel.[9] However, punishment of counsel to the detriment of his client is not the function of the court. (See *Shaff* v. *Baldwin* (1951) 107 Cal. App.2d 81, 87 [236 P.2d 634].) Intemperate and unprofessional conduct by counsel as is here involved runs a grave and unjustifiable risk of sacrificing an otherwise sound case for recovery, and as such is a disservice to a litigant. These same tactics, in another context, would likely result in a reversal. However, under the facts and circumstances of this case, we conclude that the award to plaintiff, as modified by the remittitur, is justified.

The judgment is affirmed.

McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

TRAYNOR, C. J.—I dissent.

I would reverse the judgment on the ground that the misconduct of counsel for plaintiff deprived defendant of its right to a fair trial.

In his opening statement, counsel for plaintiff made a preliminary appeal to the sympathy of the jury by stressing that plaintiff had left school after the seventh grade to go to work and had worked for defendant for 36 years. Thereafter in the course of the trial, counsel deliberately sought to implant prejudice in the jury against defendant. He insinuated without offering any evidence to prove it, that defense counsel had withheld photographs favorable to plaintiff. He referred

[8]While it cannot be said that the trial court here ''lost control'' of the proceedings (cf. *Love* v. *Wolf* (1964) *supra*, 226 Cal.App.2d 378, 391), a court should on its own initiative intercede to prevent potentially prejudicial conduct of counsel. Such action here, directed either at counsel or to the jury, not only might have mitigated the prejudice here alleged, but it would have enhanced the dignity and demeanor of the proceedings.

[9]Counsel's law firm has been the subject of judicial condemnation in at least two other recent instances of comparable misconduct. (*Horn* v. *Atchison, T. & S.F. Ry. Co.*, *supra*, 61 Cal.2d 602; *Love* v. *Wolf, supra*, 226 Cal.App.2d 378.)

to defendant and its attorneys as "cheapskates." He asked rhetorical questions calculated to convey the impression that defense witnesses were not honest in their testimony. Nor was that all. After several days of trial, when a trial court is normally reluctant to grant a mistrial, he used his closing argument to intensify his appeal to the passion and prejudice of the jury. The appeal was the more insidious because it followed upon a fulsome declaration of his great trust in the jury system. His trust was such that he urged a verdict on issues extraneous to the merits. Approximately a third of his argument consisted of emotional attacks on defendant, its counsel, and its witnesses for defendant. He called upon the jury to "tell the Southern Pacific in that verdict it is high time to quit treating their employees that way."

There is no question that his conduct was on its face prejudicial. The question to be resolved is whether or not defendant waived its right to complain even though it repeatedly made objections at the trial.[1] The objections were more than enough to alert the trial court. The court itself sought to call a halt to the objectionable conduct by admonishing counsel for plaintiff to "confine yourself to the evidence and such reasonable

---

[1]Counsel for defendant objected ten times during the closing argument for plaintiff. The appeals to prejudice and the corresponding objections are tallied below:

*First*: "Now, ladies and gentlemen, I know that before you folks sat here, that you came here on January 25th, 1964, and I know in your hearts, as in my heart, after you saw the presentation of this case, that I'll bet you are amazed and stunned beyond belief. This isn't really 1964 at all. This goes back to the early stages of man's inhumanity to man long before they were savages, because I submit, and I will discuss with you folks this afternoon, never in the history of man could anyone have been taken down the tubes or down the drain like one Mike Sabella was.

"And I say to you, ladies and gentlemen, that the conduct of his employer, the Southern Pacific Company in this case, is about as reprehensible in 1956 [*sic*]—

"MR. PHELPS [counsel for defendant]: Your Honor, I am going to object to this line of argument and assign it as misconduct, particularly in view of Your Honor's ruling that is keeping out of evidence the matter that I wanted to introduce, the matter that I—the argument is along the lines I was anticipating and I could have met and did want to meet by evidence, and I will object and cite it as misconduct and ask for a mistrial.

"THE COURT: Well, the motion for a mistrial will be denied; and I suggest, Mr. Teerlink, that you confine yourself to the evidence and such reasonable implications as you may draw therefrom.

"MR. TEERLINK: Yes, Your Honor."

*Second*: "Did they even agree to pick up $11.50 a month to see that the poor guy got his hospitalization? No.

"MR. PHELPS: If Your Honor please, I am going to object in view of the offer of proof I made in chambers as to what this man's actual situation was and the election he made, and I think it is misconduct to encroach in the manner that has been done.

"MR. TEERLINK: The stipulation, as I understand, Your Honor, was

implications as you may draw therefrom.'' When counsel for plaintiff nevertheless made fresh appeals to the passion and prejudice of the jury, and defense counsel continued to

---

that the railroad company tendered the right to pick up his hospital benefits, and they declined; that was the stipulation that you entered.

''Mr. Phelps:I understand that, but you are arguing something that prevents me from answering.

''The Court: Let's not go beyond the stipulation.''

*Third*: ''They cut off—no more hospital benefits, no more out-patient, by the time of December—

''Mr. Phelps: I make the same objection, Your Honor please, in view of the situation, my hands having been tied—

''Mr. Teerlink: I say there are no benefits payable after December. That is the evidence.

''Mr. Phelps: 'What did the Southern Pacific Company do when you'—

''The Court: Let's—

''Mr. Phelps: —I object to that and assign it as misconduct.

''Mr. Teerlink: That is the evidence, Your Honor. He had no benefits after December.

''The Court: I know, but you are going beyond that.

''Mr. Phelps: You foreclosed me.

''The Court: Let's stay within the confines.''

*Fourth*: ''Do you think that was strategy? This is the way they play the ball game. They don't know how to play it fair. The last witness, ladies and gentlemen, is, lo and behold, McLaughlin—

''Mr. Phelps: I object and assign that as misconduct: 'They don't know how to play it fair.' There is a case that this very firm has been reversed for, argument of a similar nature, and I assign it as misconduct and ask for a mistrial.

''The Court: Motion denied.''

*Fifth*: ''They employ 45,000 people, and they couldn't make room for him to do anything—maybe even delivering the messages down at 65 Market Street; you mean to tell me, ladies and gentlemen, if you have got the good will of your employee at stake that you won't at least call him up and say—

''Mr. Phelps: I am going to object to this on the same ground and cite it as misconduct. Your Honor knows what the situation is. Your Honor knows what I was foreclosed from, and I think that this is improper argument.

''The Court: Just a moment.

''Mr. Phelps: Your Honor knows what the situation was.

''The Court: Let's keep it within the confines of the evidence.''

*Sixth*: ''Now, ladies and gentlemen, isn't it interesting to you, when they've got all these pictures, where is that claims man with the rest of the pictures they didn't show? He has been around here for two weeks, and we haven't seen or heard from him.

''Mr. Phelps: Just a moment. He is implying— You told me you didn't want him this morning.

''Mr. Teerlink: Only—

''Mr. Phelps: You told me you didn't want him. I had him here at your request.

''Mr. Teerlink: Sit down and let me finish my argument.

''The Court: All right, gentlemen; we have a time limit. Please.''

*Seventh*: ''Does it seem ironical to you, ladies and gentlemen, that they can take aerial photographs—

''Mr. Phelps: I—

''Mr. Teerlink: Will you keep out of my argument. —that they can take aerial photographs within a few hours or less than that? Imagine

object, the court once again admonished counsel for plaintiff to "stay within the confines." When counsel for plaintiff persisted in his misconduct, in the face not only of defendant's objections and motions for mistrial but also of the admonitions of the court, he evinced a studied determination to ride roughshod over any and all objections or admonitions.

Though he threw one caution after another to the wind, he now contends that defendant waived objection to any misconduct by not supplementing his repeated objections with a request that the trial court admonish the jury to disregard the misconduct.[2] No admonition, however, could cure the preju-

---

getting an airplane and camera equipment and start shooting photographs to defeat a claim—and rulers, when all they would have had to do—''

(The photographs were not taken from an airplane.)

*Eighth*: ''Mike Sabella was lying on his back with a busted back thinking maybe they were going to do something decent for him, maybe once in a life the friendly Southern Pacific could be friendly. No, sir. All we get is a second best, a lousy evidence that they decide to bring in.

''You see, all the pictures that may show it to his advantage, you don't see them.

''MR. PHELPS: Now—

''MR. TEERLINK: They are not here.

''MR. PHELPS: I will object to that and assign it as misconduct. This is, again, characteristic of the defense, and without any evidence, without justification, and the type of thing that the Courts have said is not proper, and I object to it.

''THE COURT: Go ahead.''

*Ninth*: ''Now, what about poor Mr. Medina [a witness for defendant]? What do you think poor Mr. Medina must think when he sees and he knows what they are doing to Mike? What would happen to poor Medina if he didn't go along with it? Ever think about that?

''When they see how they threw him on the human trash pile, how quick would they give it to Medina if he didn't go along—

''MR. PHELPS: I object again and cite this as misconduct in view of the fact I was foreclosed from proving that isn't the fact as to what we did or what was done for this man, and I cannot stand still and listen to this, knowing what the facts are.''

*Tenth*: ''[Y]ou can look at the sorrowful look in a man's eyes when you are taking his deposition, and they cry out to you, 'I would like to help you, Mr. Teerlink, but I can't; I've got to send him down the tubes; it is him or me,' and that is the way you see it.

''MR. PHELPS: If Your Honor please, 'down the tubes,' when this man is down—the situation is such, Your Honor please, I am foreclosed from saying it—

''MR. TEERLINK: You've said that about 14 times.

''MR. PHELPS: The ruling—

''MR. TEERLINK: You haven't given him a job; that is for sure.

''MR. PHELPS: That is just— Now, there we go again.

''If Your Honor please, instruct Mr. Teerlink to desist from that. I assign it again as misconduct and move for a mistrial in view of the offers that I made of proof.

''THE COURT: Denied. Proceed.''

[2]It is at least debatable that implicit in any objection to misconduct is a request that the jury be admonished to disregard it. Thus, in *Hoffman* v. *Brandt* (1966) 65 Cal.2d 549, 553 [55 Cal.Rptr. 417, 421 P.2d

dicial effect of such misconduct as prevailed throughout this case. Accordingly, defendant's failure to request admonitions to the jury does not preclude it from challenging the misconduct on appeal. (*Hoffman* v. *Brandt* (1966) 65 Cal.2d 549, 553 [55 Cal.Rptr. 417, 421 P.2d 425]; *Horn* v. *Atchison, T. & S. F. R.R. Co.* (1964) 61 Cal.2d 602, 611 [39 Cal.Rptr. 721, 394 P.2d 561]; *Love* v. *Wolf* (1964) 226 Cal.App.2d 378, 392 [38 Cal.Rptr. 183].) Plaintiff's counsel can hardly claim that his repeated appeals to passion and prejudice were of such little appeal that they could have been simply erased by admonitions.

Counsel for plaintiff offers a brace of alternative contentions, namely, that there was no misconduct but only colorful argument, and that in the event of any error, it was cured by the trial court's remittitur. These contentions cannot be sustained. It is misconduct to compare the wealth of plaintiff and defendant (*Hoffman* v. *Brandt, supra,* 65 Cal.2d 549, 553; *Love* v. *Wolf, supra,* 226 Cal.App.2d 378, 388-389); counsel for plaintiff did so.[3] It is misconduct to accuse defendant and defendant's counsel of suborning perjury (*Love* v. *Wolf, supra,* 226 Cal.App.2d 378, 391); counsel for plaintiff did so.[4] It is misconduct to accuse defense counsel of withholding evidence (*Keena* v. *United Railroads* (1925) 197 Cal. 148, 158-160 [239 P. 1061]); counsel for plaintiff did so.[5] It is misconduct to suggest to the jurors that they measure damages by what they would take to endure plaintiff's suffering (*Horn* v. *Atchison, T. & S. F. R.R. Co., supra,* 61 Cal.2d 602, 609; *Zibbell* v. *Southern Pac. Co.* (1911) 160 Cal. 237, 255 [116 P. 513]); counsel for plaintiff did so.[6] It is misconduct to suggest facts not in evidence that counsel knows could be contradicted by evidence that the court had excluded (*Hoffman* v.

425], counsel objected but did not request an admonition. The trial court, however, admonished the jury on its own motion. We nevertheless held that the admonition did not cure the error.

[3] Referring to plaintiff, counsel said: "You saw what they did to him. You saw the thanks he got. He got just exactly what they give to any poor guy with a seventh grade education: he got nothing."

About defendant, he said: "They employ 45,000 people, and they wouldn't even make room for him to do anything—maybe even delivering the messages down at 65 Market Street."

[4] See note 1, *supra*, Ninth.

[5] See note 1, *supra*, Fourth, Sixth, and Eighth.

[6] "And as to that 6,570 days of misery he has got left, there isn't a soul in this world that would put up with what Mike Sabella is going to have to put up with, the hopelessness of it all, for a measly figure we have got down there."

*Brandt, supra,* 65 Cal.2d 549, 554) ; counsel for plaintiff did so.[7]

The courtroom is a forum for the presentation of evidence and rational argument, not a stage for over mellow drama. The responsibility of a lawyer is to raise issues, not scenes, and to reason about them in nontheatrical terms. Invective, with all its theatrics, has no place in the language of the law.

When appeals to passion and prejudice may have influenced a verdict, they may have influenced it on the issue of liability as well as on the issue of damages. Hence, in such a case remittitur cannot cure the error. (*Minneapolis, etc. RR. Co.* v. *Moquin* (1931) 283 U.S. 520 [75 L.Ed. 1243, 51 S.Ct. 501]; *Sanguinetti* v. *Moore Dry Dock Co.* (1951) 36 Cal.2d 812, 820 [228 P.2d 557].) There is no cure but reversal for an error that impairs the right to a fair trial. The right to a fair trial includes the right to an impartial trier of fact and the correlative right to a trial free of appeals to passion and prejudice.

We take great care to excuse prospective jurors who may be subject to emotional appeals. We take great care to instruct jurors not to discuss the case with outsiders or to read about it, so that they will remain beyond the reach of influence outside the courtroom. It is a minimum propriety to guard against calculated attempts to prejudice the jury inside the courtroom, for they do violence to the substantial rights of a litigant. Still worse, they would in the long run so debase the judicial process that no one could enter a courtroom confident of a fair trial.

---

[7] See note 1, *supra,* First, Second, Third, Fifth, Ninth, and Tenth.

The line of argument that defendant refused to give plaintiff a job is contradicted by the fact that plaintiff did not attempt to return to work but applied for a pension instead. We may assume, without deciding, that evidence of the pension was inadmissible. (*Eichel* v. *New York Central R. Co.* (1963) 375 U.S. 253 [11 L.Ed.2d 307, 84 S.Ct. 316].)