[Civ. No. 38753. First Dist., Div. Two. Jan. 31, 1977.]

WILLIAM M. HAND, Plaintiff and Appellant, v.
BOARD OF EXAMINERS IN VETERINARY MEDICINE,
Defendant and Appellant.

## Counsel

Wilson, Jones, Morton & Lynch and Michael R. Nave for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Jerome C. Utz and Kenneth L. Freeman, Deputy Attorneys General, for Defendant and Appellant.

## Opinion

**BRAY, J.***—Defendant, appellant and respondent Board of Examiners in Veterinary Medicine (hereinafter Board) appeals from the judgment of the San Mateo County Superior Court granting the petition for writ of mandate of plaintiff, respondent and appellant Dr. William M. Hand (hereinafter Dr. Hand). Dr. Hand cross-appeals from the portion of the

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

judgment ordering the Board to reconsider its action in light of the trial court's findings.

## ISSUES PRESENTED

A) Appeal of Board.

1) The evidence is sufficient to support the decision of the trial court.

   a) The Board waived its right to object to the decision being based upon the offer of proof.

   b) There is evidence to support the trial court's decision.

2) The trial court did not err in remanding the case to the Board for further hearing.

B) Cross-appeal of Dr. Hand.

1) Subdivision (k) of section 4882 of the Business and Professions Code is constitutional.

   a) Dr. Hand did not waive the issue of constitutionality of subdivision (k) of Business and Professions Code section 4882.

   b) Subdivision (k) of Business and Professions Code section 4882 is not unconstitutional due to vagueness.

## RECORD

On July 15, 1974, the Board of Examiners in Veterinary Medicine for the State of California filed an accusation against William Milton Hand and Sheila Palmer Shannon (hereinafter Dr. Shannon). Disciplinary action was sought against these two licensed veterinarians because of the treatment or lack of treatment rendered to a black male terrier named Noah while the dog was at the Peninsula Humane Society. The grounds for the proposed disciplinary action were that the conduct of the two veterinarians reflected unfavorably on the profession of veterinary medicine and constituted incompetence in the practice of veterinary medicine. (Bus. & Prof. Code, § 4882, subds. (k) and (n).)[1]

---

[1]Unless otherwise indicated all references are to the Business and Professions Code.

After a hearing before the Board, the hearing officer prepared a proposed decision which was adopted by the Board to become effective on January 15, 1975. The decision of the Board suspended the license of Dr. Shannon for a period of 10 days, with the period of suspension being permanently stayed, and suspended the license of Dr. Hand for a period of 60 days.

On January 13, 1975, Dr. Hand filed a petition for writ of mandate in the Superior Court of San Mateo County seeking to set aside the decision of the Board on the grounds that the decision is not supported by the findings, Dr. Hand did not receive a fair hearing and Dr. Hand has additional evidence which will materially impeach the testimony of Dr. Shannon and another witness at the hearing. The trial court issued an alternative writ of mandate and the Board filed a return to the alternative writ by way of answer. Thereafter, Dr. Hand filed an amendment to the petition alleging that subdivision (k) of section 4882 is unconstitutional because of vagueness.

The matter was heard before the Honorable Robert E. Carey. Thereafter, the intended decision was filed wherein the trial court found there was relevant evidence which in the exercise of reasonable diligence could not have been produced at the hearing before the Board. The trial court granted a peremptory writ of mandate, entered judgment ordering the decision of the Board set aside and remanded the case to the Board for a new hearing.

Both the Board and Dr. Hand have appealed.

## STATEMENT OF FACTS

The following testimony was given at the hearing before the Board: At all times pertinent to the instant case Dr. Hand was in charge of the medical care of all animals at the Peninsula Humane Society in San Mateo. Dr. Shannon was employed by Dr. Hand in November of 1972 to assist him in his private practice as well as in the performance of his duties for the Peninsula Humane Society.

On November 19, 1972, a three-to-five month old black terrier dog was taken to the Peninsula Humane Society. The dog had two broken legs when he was brought to the society but apparently had received no treatment for his injuries.

Around December 17, 1972, Shana Jarrett (hereinafter Jarrett) went to the Peninsula Humane Society and expressed her interest in adopting the black terrier which she named Noah. Jarrett was informed that the dog could not be released until a veterinarian had certified that the animal could be adopted. On December 17, 1972, Dr. Shannon certified that she had examined Noah and that he could be put up for adoption. On December 18, 1972, Dr. Hand certified that the animal was cleared for adoption.

On December 19, 1972, Jarrett obtained possession of the dog and took it to two local veterinarians for examination. Both veterinarians testified that the splint applied to the dog's right rear leg had not been adjusted for approximately one month. Because of the growth of the dog, even if the splint had originally been properly placed, the splint was improperly located on December 19, 1972. The splint, instead of stabilizing the bone, acted as a fulcrum, exerting pressure against the point of the fracture, preventing a proper union and ulcerating the leg to the bone. Both veterinarians testified that competent veterinary practice would require that a puppy which had had a splint applied for a broken leg be reexamined approximately once a week.[2]

Dr. Shannon testified on her own behalf and stated she began assisting Dr. Hand at the Peninsula Humane Society on December 1, 1972. Dr. Shannon's first assignment "was to do spays and neuters of staff [Peninsula Humane Society] people's animals." Around December 16 or 17, 1972, Dr. Shannon started looking for other things to do at the humane society. Dr. Shannon denied any memory of the dog but admits that she signed the paper stating that the dog could be put up for adoption. Dr. Shannon thought the dog would be examined by Dr. Hand before it was released for adoption and her duty when stating the dog could be placed for adoption was to conduct merely an initial or cursory examination. She felt that since the splints had been placed on the dog's legs by Dr. Hand, that he was also conducting periodic checks. She agreed with the testimony of the two expert witnesses that mandatory veterinary procedure required periodic examinations of the splints on the legs of young dogs.

Dr. Hand testified that he was in charge of the Peninsula Humane Society during the periods in question. He also agreed that good medical practices required the frequent checking of splints on the legs of young

---

[2]On the advice of these two veterinarians, Jarrett had the dog euthanized.

dogs. Dr. Hand has no recollection of the dog. In the year Dr. Hand was at the Peninsula Humane Society, the society "handled close to forty-thousand dogs." Dr. Hand explained during this period the society was in an emergency situation, a triage. A triage is a medical principle which means the most medical care is given to the animals that need it the least. Dr. Hand assumes he noticed that Dr. Shannon placed the dog for adoption and he probably relied upon the diagnosis of Dr. Shannon. He stated in many cases he released dogs for adoption by visual inspection through the doors of their cages.

It was necessary for Drs. Shannon and Hand to speculate on the type of treatment given Noah because the treatment or observation card which would show the history of treatment received by the animal was missing and has not been found.

At the hearing on the petition for writ of mandate, Dr. Hand argued that certain additional evidence should be considered which in the exercise of due diligence could not have been admitted at the administrative hearing. He made the following offer of proof: The date of the employment of Dr. Shannon differs from her testimony; the nature of veterinary treatment and examination performed by Dr. Shannon during the period in question differs from her testimony; Dr. Hand gave the Board's investigator an adoption slip for Noah that was a different color than the one introduced into evidence; and the adoption slip introduced into evidence at the hearing before the Board was not used by the Peninsula Humane Society until January of 1973.

A) *Appeal of Board.*

1) *The evidence is sufficient to support the decision of the trial court.*

The Board argues that the trial court erred when it based its findings and decision on an offer of proof. The Board states that an offer of proof is nothing more than argument by counsel and cannot support the decision of the trial court. Conversely, Dr. Hand argues that the Board cannot now complain because the Board acquiesced in the presentation of the offer of proof. Dr. Hand further contends that even if this court does not deem that the Board has waived any objection it may have had to the decision being based on an offer of proof, there is sufficient evidence to support the decision. To support this contention Dr. Hand argues that the petition for writ of mandate is verified and since evidence

in a special proceeding can be produced by affidavit, the verified petition constitutes evidence and therefore the decision of the trial court has evidentiary support. Dr. Hand asserts that even assuming this court should decide that there was no evidence before the trial court on which to base its decision, the offer of proof was sufficient for the limited decision that was rendered. That is, the trial court could remand the case to the administrative level pursuant to subdivision (d) of section 1094.5 of the Code of Civil Procedure, once it had determined that there was relevant evidence which could not in the exercise of due diligence have been produced at the administrative hearing. Dr. Hand urges that this determination by the trial court may properly be based solely upon an offer of proof.

a) ██ *The Board waived its right to object to the decision being based upon the offer of proof.*

It will be assumed for the purposes of resolving this particular point that the decision of the trial court is based solely on an offer of proof. Dr. Hand states: "A review of the trial court transcript clearly demonstrates that [the Board] acquiesced in the presentation of the offer of proof. That such acquiescence is an implied waiver of any error in the decision is compelled by numerous California authorities." The cases cited by Dr. Hand stand for the well established rule that a party may not complain of an alleged error in the reviewing court if he has not raised or objected to the error in the trial court or at the administrative level. (*Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311, 317-319 [74 Cal.Rptr. 534, 449 P.2d 750], cert. den., 395 U.S. 960 [23 L.Ed.2d 746, 89 S.Ct. 2100]; *Kauffman* v. *De Mutiis* (1948) 31 Cal.2d 429, 432 [189 P.2d 271]; *Wilson* v. *State Personnel Bd.* (1976) 58 Cal.App.3d 865, 883 [130 Cal.Rptr. 292]; *Cummings* v. *Cummings* (1929) 97 Cal.App. 144, 149 [275 P. 245].)

A reading of the record indicates that the Board agreed that the trial court could determine whether the record should be augmented with additional evidence after considering the offer of proof. The Board argued before the trial court that the additional evidence that Dr. Hand wished to introduce was not relevant to the issues determined by the Board and that Dr. Hand could have introduced the additional evidence at the administrative hearing. The Board stated that the trial court had before it all that was necessary to determine whether additional evidence should be introduced. Counsel for the Board stated if the trial court found that additional evidence should be taken, it then must decide

whether to hear the evidence itself or remand the case to the administrative level.

Subdivisions (d) and (e) of section 1094.5 of the Code of Civil Procedure provide: "(d) Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (e) of this section remanding the case to be reconsidered in the light of such evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit such evidence at the hearing on the writ without remanding the case.

"(e) The court shall enter judgment either commanding respondent to set aside the order or decision, or denying the writ. Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in the light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law but the judgment shall not limit or control in any way the discretion legally vested in the respondent."

It is clear that the Board agreed that the trial court could decide the two preliminary issues under subdivision (d) on the basis of the offer of proof. That is, whether the additional evidence is relevant and whether the party could not, in the exercise of due diligence, produce the evidence at the administrative hearing. This is not a situation where counsel merely failed to object but where counsel approved the proposed procedure that the trial court determine the two preliminary issues under subdivision (d) on the offer of proof. Therefore, the Board cannot complain for the first time on appeal.

b) *There is evidence to support the trial court's decision.*

█ In the petition for writ of mandate, Dr. Hand alleged that he would offer evidence "that will materially impeach the testimony of the complaining witness SHANA JARRETT and the aforementioned SHEILA PALMER SHANNON, . . ." Dr. Hand further alleged that this evidence, in the exercise of due diligence, could not have been produced at the administrative hearing. The petition was verified by Dr. Hand by a declaration under penalty of perjury.

A petition for a writ of mandate is a special proceeding. (Code Civ. Proc., § 1063 et seq.) Evidence in support of a petition for a writ of mandate can be produced by affidavit. (Code Civ. Proc., § 2009.) A declaration under penalty of perjury may be used in lieu of an affidavit. (Code Civ. Proc., § 2015.5.) Therefore, a verified petition constitutes evidence which is sufficient to support a judgment. (*Macmorris Sales Corp.* v. *Kozak* (1967) 249 Cal.App.2d 998, 1003 [58 Cal.Rptr. 92]; see also *Smith* v. *Smith* (1970) 4 Cal.App.3d 446, 451-452 [84 Cal.Rptr. 241].)

Therefore, there is sufficient evidence to support the decision of the trial court.

2) ██ *The trial court did not err in remanding the case to the Board for further hearing.*

The Board argues that the additional or new evidence that Dr. Hand is seeking to introduce is not relevant and "all of this alleged evidence 'in the exercise of reasonable diligence' could have been produced at the administrative hearing." The Board asserts that evidence which goes to impeach a witness does not automatically fall within the exception of newly discovered evidence.

██ When an administrative agency decision affects a right which has been legitimately acquired or otherwise vested, the court exercises its independent judgment when it reviews the administrative decision. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29].) The court may substitute its judgment for that of the agency if the court determines that the findings of the agency are not supported by the weight of the evidence. (*Id.,* at p. 44.) When a court is exercising its independent judgment, there is a " 'limited trial de novo.' " (*State of California* v. *Superior Court* (1971) 16 Cal.App.3d 87, 94 [93 Cal.Rptr. 663].) **(5)** Subdivision (d) of section 1094.5 of the Code of Civil Procedure precludes the introduction of evidence unless the court finds (1) there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced at the administrative agency or (2) there is relevant evidence which was improperly excluded at the administrative hearing. It is for the trial court to determine if either of these situations exists for the admission of evidence at the mandamus proceeding. This court will not disturb the determination of the trial court on this issue unless the trial court abused its discretion in admitting new evidence. (See *Mast* v. *State Board of*

*Optometry* (1956) 139 Cal.App.2d 78, 89 [293 P.2d 148]; *Sautter* v. *Contractors' State License Bd.* (1954) 124 Cal.App.2d 149, 155 [268 P.2d 139].

"If the credibility of witnesses before the board is brought into question at the mandamus proceeding, opportunity to contradict or impeach their testimony is to be afforded at the trial." (*Tringham* v. *State Board of Education* (1955) 137 Cal.App.2d 733, 738 [290 P.2d 890]; *Sautter* v. *Contractors' State License Bd.*, *supra*, 124 Cal.App.2d 149, 154.) There can be little question that evidence which goes to the credibility of a witness is relevant. The contention of the Board that the offered evidence is not relevant can be rejected without further discussion. ■ The only question that remains is if the trial court abused its discretion in concluding that Dr. Hand in the exercise of due diligence could not have presented the evidence at the administrative hearing. The following allegation appears in the petition for writ of mandate on the issue of reasonable diligence: "This evidence and other evidence supportive of petitioner's case could not, in the exercise of reasonable diligence, have been produced by the petitioner at the administrative hearing because of its nature as impeaching evidence. Petitioner could not reasonably have anticipated the introduction of altered evidence, or that the testimony of his former associate and co-defendant would be directed not to her defense, but to an attack upon him." This would appear to be a sufficient showing that Dr. Hand could not in the exercise of due diligence have anticipated the testimony of Dr. Shannon and therefore was unable to present impeaching evidence at the administrative hearing. The Board has failed to show that the trial court abused its discretion since there is sufficient evidence in the record to support the determination of the trial court. (See *Thayer* v. *Board of Osteopathic Examiners* (1958) 157 Cal.App.2d 4, 9 [320 P.2d 28].) *Mast* v. *State Board of Optometry*, *supra*, 139 Cal.App.2d 78, cited by the Board, does not compel a different conclusion. In *Mast*, the appellate court stated the trial court did not abuse its discretion in refusing to permit the introduction of impeaching evidence since "it affirmatively appears from the discussion of counsel that he did not expect to elicit anything from the witnesses beyond that already in the record, . . ." (*Id.*, at p. 89.)

Dr. Hand argues that while the action of the trial court was proper when it remanded the matter to the administrative agency, "it would be more observing of expeditious justice" if the trial court had exercised its independent judgment on the administrative record. Under subdivision

(d) of section 1094.5 of the Code of Civil Procedure when the trial court determines additional relevant evidence should be admitted, it may remand the case to the administrative agency for reconsideration in light of such evidence or if the court is exercising its independent judgment, it may admit such evidence and consider the evidence in addition to the administrative record. Therefore, since it is clear that the trial court could in its discretion hear the additional evidence or remand the case to the administrative agency, Dr. Hand has not presented any legal issue that needs to be considered by this court.

B) *Cross-Appeal of Dr. Hand.*

1) *Subdivision (k)[3] of section 4882 is constitutional.*

The entire appeal of Dr. Hand is directed toward the constitutionality of subdivision (k) of section 4882 of the Business and Professions Code; the effect that a determination that this section is unconstitutional would have on this case; and the conclusion of the trial court that the issue of the constitutionality of this section was waived by the failure of Dr. Hand to raise the issue at the hearing.

a) ■ *Dr. Hand did not waive the issue of the constitutionality of subdivision (k) of section 4882.*

There is no dispute that Dr. Hand did not raise the constitutionality of subdivision (k) of section 4882 of the Business and Professions Code at the administrative hearing. The Board contends that his failure to raise the issue constitutes a waiver.

In *State of California* v. *Superior Court* (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281], the petitioner argued for the first time in the trial court that the California Coastal Zone Conservation Act of 1972 was unconstitutional. The California Coastal Zone Conservation Commission asserted that petitioner could not raise the issue of the constitutionality of the act because the doctrine of exhaustion of administrative remedies is applicable to a claim of unconstitutionality. The court in holding that a litigant does not have to challenge the constitutionality of the statute under which an administrative agency

---

[3]This subdivision states: "The board may revoke or suspend a certificate for any of the following causes: . . . [¶] (k) Conduct reflecting unfavorably on the profession of veterinary medicine."

functions in the administrative agency itself stated: "since an administrative agency is not the appropriate forum in which to challenge the constitutionality of the basic statute under which it operates, there seems little reason to require a litigant to raise the constitutional issue in proceedings before the agency as a condition of raising that issue in the courts. It would be heroic indeed to compel a party to appear before an administrative body to challenge its very existence and to expect a dispassionate hearing before its preponderantly lay membership on the constitutionality of the statute establishing its status and functions. We conclude that Veta should be permitted to challenge the constitutionality of the Act in this proceeding even though it failed to make such a challenge before the Commission at the time it applied for a permit." (*Id.,* at p. 251.)

In a recent decision, the California Supreme Court ruled that the state Public Utilities Commission has the authority to determine the constitutionality of statutes it is called upon to apply. (*Southern Pac. Transportation Co.* v. *Public Utilities Com.* (1976) 18 Cal.3d 308 [134 Cal.Rptr. 189, 556 P.2d 289].) Although this recent Supreme Court case does not involve the doctrine of exhaustion of administrative remedies, the court in footnote 2 noted: "In a few cases involving the question whether a litigant may raise constitutional issues in court when he has not exhausted administrative remedies, it has been indicated that administrative agencies may not determine the validity of statutes, invalidating the legislative will." (*Id.,* at p. 311.) The court cites Davis on administrative law to support the quoted statement. Davis, in his treatise on administrative law, points out that while an administrative agency may not have the power to determine the constitutionality of a statute, this has not precluded some courts from stating that the constitutionality of a statute must be raised at the administrative level although the administrative agency cannot pass on the issue. (3 Davis, Administrative Law Treatise (1958) § 20.04, pp. 74-78.) Davis suggests that the reasonable rule would be to require exhaustion of administrative remedies only when it is within the agency's authority to determine the constitutionality of a statute. (*Id.,* at p. 78.)

The court in *Southern Pac. Transportation Co.* determined that the Public Utilities Commission has been granted wide administrative, legislative and judicial powers by the Constitution and statutes of this state. (*Southern Pac. Transportation Co.* v. *Public Utilities Com., supra,* at

p. 311, fn. 2.) It is unclear from the opinion if *all* administrative agencies have the power to determine the constitutionality of a statute. If this is the holding of *Southern Pac. Transportation Co.,* it would appear to overrule the statement in *State of California* v. *Superior Court, supra,* 12 Cal.3d 237, 251, that "an administrative agency is not the appropriate forum in which to challenge the constitutionality of the basic statute under which it operates, . . ." Since the majority opinion in *Southern Pac. Transportation Co.* does not mention or disapprove of *State of California* v. *Superior Court,* this leaves only two possible conclusions—either *Southern Pac. Transportation Co.* applies only to the Public Utilities Commission and other administrative agencies of constitutional origin or *State of California* v. *Superior Court* stands for the limited proposition that administrative remedies need not be exhausted if and only if the constitutional challenge is to the basic statute under which it operates. This latter interpretation would seem to be the least desirable. The holding of *State of California* v. *Superior Court* appears to be based upon the doctrine that "The law neither does nor requires idle acts." (Civ. Code, § 3532.) That is, a litigant is not required to raise an issue in a forum that does not have the power to decide the issue. The only reasonable manner in which these two cases can be reconciled is that *Southern Pac. Transportation Co.* allows only the Public Utilities Commission and other administrative agencies which are of constitutional origin to determine whether a statute enacted by the Legislature is constitutional. The Public Utilities Commission has been granted extensive powers by the California Constitution. (Cal. Const., art. XII, §§ 1-9.)

Applying this analysis to the instant case, since the Board of Examiners in Veterinary Medicine is part of the Department of Consumer Affairs (Bus. & Prof. Code, §§ 101, 4800), which is not an administrative agency of constitutional origin, it may not declare a statute enacted by the Legislature unconstitutional. To hold that an administrative agency created by the Legislature can declare a statute enacted by the Legislature unconstitutional would offend the doctrine of separation of powers as provided in article III, section 3, of the California Constitution: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (See *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 35-37.) Therefore, since the Board cannot declare a statute unconstitutional and the law does not require idle acts,

Dr. Hand did not waive the issue of the constitutionality of subdivision (k) of section 4882 by failing to raise it in the administrative agency.[4]

*Griswold* v. *Mt. Diablo Unified Sch. Dist.* (1976) 63 Cal.App.3d 648 [134 Cal.Rptr. 3], is not applicable here. In that case the court in a mandamus proceeding arising out of a school district's decision to transfer the petitioner to another school held that the doctrine of exhaustion of administrative remedies applied where the petitioner had failed at the administrative hearing to raise the constitutional issue that his ouster was an infringement of his First Amendment rights of free speech. The reason given by the court was that the constitutional issue presented "mixed questions of law and fact." (*Id.,* at p. 653.) The court pointed out that "there are exceptions to the rule that appellate courts will not ordinarily consider matters tardily raised . . . wherein the issue relates to questions of law alone or where questions of public policy are involved" but that "The exhaustion doctrine is applicable in the instant case since the constitutional issue which appellant desires to raise presents mixed questions of law and fact." (*Id.,* at p. 653.) In the instant case the constitutional issue which plaintiff proposes to raise presents questions of law, hence the exhaustion doctrine does not apply.

b) ▇ *Subdivision (k) of section 4882 is not unconstitutional due to vagueness.*

Dr. Hand argues that subdivision (k) of section 4882 of the Business and Professions Code is vague, indefinite and uncertain. The Board does not in any detail address this issue advanced by Dr. Hand, but rather takes the view that the accusation read with section 4882, subdivision (k), is specific and clear.

In *McMurtry* v. *State Board of Medical Examiners* (1960) 180 Cal.App.2d 760, 766-767 [4 Cal.Rptr. 910], the court stated various tests for vagueness: "It is well settled that 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' [Citations.] This principle applies not only to statutes of a penal nature but also to those prescribing a standard of conduct which is the subject of

[4]The above discussion concerns only the constitutionality of legislation and does not purport to consider the constitutional applicability of legislation to a particular fact situation. When a constitutional issue presents mixed questions of law and fact, the issue must be raised at the administrative level.

administrative regulation. [Citations.] *The language used in such legislation 'must be definite enough to provide a standard of conduct' for those whose activities are prescribed as well as a standard by which the agencies called upon to apply it can ascertain compliance therewith.* [Citation.] Approved rules by which to judge the sufficiency of a statute in the premises have been applied in numerous decisions, i.e., the words used in the statute should be 'well enough known to enable those persons within its purview to understand and correctly apply them.' [Citation]; words of long usage, or which have an established or ascertainable meaning in the profession or industry involved, or those which have been given a definite and restrictive interpretation by the courts, or the meaning of which may be determined from a fund of human knowledge and experience, will meet the test of certainty. [Citations]; if the words used may be made reasonably certain by reference to the common law, to the legislative history of the statute involved, or to the purpose of that statute, the legislation will be sustained [citations]; and a standard fixed by language which is reasonably certain, judged by the foregoing rules, meets the test of due process 'notwithstanding an element of degree in the definition as to which estimates might differ. [Citations.]' " (Italics added.)

Dr. Hand argues that subdivision (k) of section 4882 does not use language which is definite enough to provide a standard of conduct for veterinarians nor a standard by which the Board can apply to ascertain whether a veterinarian has complied.

In *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375], the petitioner argued that section 13202 of the Education Code which authorizes revocation of life diplomas for "immoral conduct," "unprofessional conduct," and "acts involving moral turpitude" is unconstitutional because the terms " 'unprofessional,' " " 'moral turpitude,' " and " 'immoral' " are so vague as to constitute a denial of due process. (*Id.,* at p. 230.) The following language from *Morrison* shows that the argument advanced by the Board is without merit. "Civil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies. [Citations.] The knowledge that he has erred is of little value to the teacher when gained only upon the imposition of a disciplinary penalty that jeopardizes or eliminates his livelihood." (*Id.,* at p. 231.) However, the court in *Morrison* held that

section 13202 of the Education Code is not unconstitutional due to vagueness stating: "the prohibitions against immoral and unprofessional conduct and conduct involving moral turpitude by a teacher constitutes a general ban on conduct which would indicate his unfitness to teach. This construction gives section 13202 the required specificity. Teachers, particularly in the light of their professional expertise, will normally be able to determine what kind of conduct indicates unfitness to teach." (*Id.*, at p. 233.)

The court in *Perea* v. *Fales* (1974) 39 Cal.App.3d 939, 942 [114 Cal.Rptr. 808], indicated the test established by *Morrison* requires two determinations: (1) Whether the regulation is sufficiently specific to provide fair warning of which conduct is prohibited and which is permitted; and (2) whether there exists a relationship or nexus between the prohibited conduct and the employee's fitness to perform the duties required by the position. In *Perea,* the court considered the constitutionality of a rule of the Redwood City Police Department which provided that a ground for discipline is " 'conduct unbecoming an officer.' " The court stated that the expression " 'conduct unbecoming an officer' " on its face fails to provide a standard, but "the required certainty may be provided by the common knowledge of members of the particular vocation when the regulation does not itself contain specific standards; . . ." (*Id.*, at p. 942.)

Thus, the phrase "conduct reflecting unfavorably on the profession of veterinary medicine" fails on its face to provide a standard by which conduct can be uniformly judged. However, as in *Morrison* and *Perea,* the required specificity is provided by common knowledge of members of the particular vocation, veterinary medicine.

*California School Employees Assn.* v. *Foothill Community College Dist.* (1975) 52 Cal.App.3d 150 [124 Cal.Rptr. 830], cited by Dr. Hand is distinguishable. In *Foothill,* this court considered whether the phrase " 'conduct unbecoming an employee in public service' " is unconstitutionally vague. This court held that the phrase " 'conduct unbecoming an employee in public service' " fails on its face to provide a standard nor can the common knowledge of members of a particular vocation provide the required certainty "since the *category of employees* in public service is *far too broad* to provide any particular guidelines." (*Id.*, at p. 155; italics in original.) Since this case pertains to a particular

vocation, the common knowledge of the members of veterinary medicine will provide the required certainty. Thus, subdivision (k) of section 4882 of the Business and Professions Code is constitutional.

Judgment affirmed.

Each party shall bear its own costs.

Taylor, P. J., and Kane, J., concurred.

The petition of the defendant and appellant for a hearing by the Supreme Court was denied April 28, 1977.