[Civ. No. 7327. Third Dist. May 8, 1947.]

J. BANKEN et al., Appellants, v. STATE BOARD OF EQUALIZATION, Respondent.

Loeb & Loeb, Frank M. Keesling and Adrian A. Kragen for Appellants.

Fred N. Howser, Attorney General, James E. Sabine and F. S. Wahrhaftig, Deputy Attorneys General, for Respondent.

ADAMS, P. J.—This appeal is taken from a judgment of the trial court that adjudged that appellants are not entitled to a refund of sales taxes paid by them to respondent, for which taxes proper claim was filed and suit for refund instituted.

The stipulation of facts upon which the case was tried shows that appellants operate an establishment under the firm name and style of Western Dye House, which specializes in the dyeing of fabrics. In the operation of the business they have for many years dyed fabrics for the various motion picture studios in southern California. Some of the fabric dyed had previously been used by the studios, while some of it was new.

Respondent assessed the tax in controversy against appellants on the theory that the charges made by them for the dyeing of new fabrics was a part of their gross receipts from the sale of tangible personal property at retail within the meaning of section 6006(c) (formerly 6006(a)) of the Revenue and Taxation Code, which provides: " 'Sale' means and includes: . . . (c) The producing, fabricating, processing, printing, or imprinting of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the producing, fabricating, processing, printing, or imprinting."

The material involved in this proceeding which the studios sent to appellants for dyeing had been acquired by such studios as a portion of purchases of large quantities of material made from time to time, some of which was in its natural state at the time of purchase, and some of it already dyed. It is agreed that the purchases by the motion picture companies were not made with the intent to use the material in any particular production or to have it dyed any particular color, that the method of purchasing by them was based upon economic expediency at the time the purchases were made and in anticipation of subsequent production needs, and that this method of doing business was in operation before the effective date of the California Retail Sales Tax Act.

It is not contended that the act is unconstitutional and

it is conceded by appellants in their brief that their treatment of the materials dyed—which is described in some detail in the stipulation of facts—clearly constitutes the ''processing'' of tangible personal property within the usual, ordinary meaning of the term processing. Consequently, if section 6006(c) of the code be literally construed and applied to all activities which involve the processing for a consideration of tangible personal property furnished by consumers, the service of dyeing materials, such as that engaged in by the appellant, constitutes a sale within its meaning, and charges therefor are subject to the retail sales tax. They argue, however, that the section should not be literally construed, but should be given an interpretation restricting its application. They concede that where the acquisition of materials by the consumer and the subsequent processing of same are parts of what is essentially one transaction, the tax is properly assessed; but contend that in this case the acquisition of the materials by the consumers and their subsequent arrangements to have them dyed were two separate transactions, that there is no room for the suggestion that this method of conducting their business was engaged in for the purpose of avoiding the sales tax on the relatively small charge for dyeing, and therefore no tax should be imposed. Appellants also state that no tax is imposed by the board where the materials processed are used materials (not new), therefore none should be imposed where the materials are new.

We think appellants' arguments are more properly addressable to the Legislature than to the courts. Certainly the language of the act is broad enough to authorize the imposition of the tax under the circumstances of this case, for it is admitted that there was a processing of the goods for a consideration, which goods were furnished by the consumer. No such exceptions as we are asked to recognize appear in the act itself, nor do we believe that they can be read into it, with reason. Nor does the fact that the board has not seen fit to apply the act to used materials furnish adequate ground for holding that the plain language of the statute is not to be applied in this case, as there is always the possibility that the board erred in making the exception rather than that it erred in applying the law to the processing of new materials.

While the record before us does not contain any historical material bearing upon the reasons for the enactment of the statute in its present form, various amendments of same in-

dicate that the Legislature did intend that it should apply in such a case as is here presented. The amendment of section two of the original act, made in 1935 (Stats. 1935, p. 1256), defined a sale as including "the fabrication of tangible personal property for consumers who furnish either directly or indirectly the materials used in the fabrication work." In 1939, this provision was enlarged to provide that a sale should include "the producing, fabricating, processing, printing or imprinting of tangible personal property for consumers who furnish either directly or indirectly the materials used in such producing, fabricating, processing, printing or imprinting." (Stats 1939, p. 2170.) Subsequently, and in 1941, section two of the former acts was codified as section 6006 of the Revenue and Taxation Code, and subdivision (a) of said section defined a sale as including the "producing, fabricating, processing, printing, or imprinting of tangible personal property *for a consideration* for consumers who furnish either directly or indirectly the materials used in the producing, fabricating, processing, printing, or imprinting," the words italicized having been added. The section was again amended in 1945, the former subdivision (a) now being subdivision (c).

No such exceptions as appellants urge have been written into the measure, though the statute as construed by the board apparently had been applied by it to similar transactions prior to the amendments. Before the amendment of 1939, a decision had been rendered by the Superior Court of Sacramento County in *Bosqui* v. *Johnson,* involving the application of the sales tax to the charges of a printer for adding to printed matter furnished by the consumer the names and addresses of certain of its agents or sub-agents. That court held that the charge for imprinting the additional matter did not constitute a sale within the act as it then read. In the amendment of 1939, the words printing or imprinting were added, indicating that the Legislature intended either to clarify the act or to amend it so as to cover just such a transaction.

Also, prior to the codification of the act in 1941, the Supreme Court had rendered a decision in the case of *Bigsby* v. *Johnson* (Cal.), 99 P.2d 268, 270-272 (Feb., 1940), in which it had held, contrary to the contentions of appellant, that where the owner of paper material furnished such material to a printer and the latter for a consideration furnished the mate-

rials for and impressed certain printing upon the paper furnished to him, there was a sale within the meaning of the statute, and that there was a transfer by the printer of title and possession of the fabricated article within the meaning of section 2(b), now section 6006(g). While a rehearing was granted in that case and the final opinion rendered in October, 1941 (18 Cal.2d 860 [118 P.2d 289]) does not cover the matters aforesaid, it appears that the appeal in behalf of the plaintiff had been dismissed, and the final opinion therefore deals only with matters involved in the appeal of defendant on one issue that had been decided in favor of plaintiff. We cite the Bigsby case, not as a final decision of the Supreme Court, but because it presents the opinion of that court in a comparable case, and because since its rendition the Legislature has twice considered the section without changing the applicable provisions thereof. And assuming that the Legislature was aware of that decision and the decision in the Bosqui case when it amended the act, its apparent broadening of the statute and its failure to make exceptions such as were contended for in those cases, signify that its intention was that it should be applied to a case such as this one.

Furthermore, the exceptions which appellants would read into the act, that is, that it should not be applied in cases where, as they say, "the circumstances are such as to permit the conclusion that in the normal course of events there would have been two separate transactions, irrespective of the sales tax," and where there was no intention to avoid the tax, would render its effective application practically impossible from an administrative standpoint. The tax is exacted from the consumer originally by the seller—in this case the dyer—and if the exceptions urged by appellants were to be made, in order to know whether to include the tax in his charges to his customer the dyer would have to inquire into the circumstances under which the materials had been acquired and determine whether there had in fact been two transactions so separated by time and circumstances as to justify a conclusion on his part that he should not include the tax as a part of his charge, and whether his customer was or was not attempting to avoid the tax; and if he failed to include it and the board differed from his conclusion as to what the circumstances and the intent of his customer were, he would be liable for the tax personally. One need go no further with this line of reasoning to see that such an exception would render the section practically unworkable.

We think that the legislative intent was that the tax should be applied to all transactions which involve the "producing, fabricating, processing, printing or imprinting of tangible personal property for a consideration for consumers who furnish directly or indirectly the materials used in such producing, fabricating, processing, printing or imprinting," and that the circumstances under which such consumers may have acquired the property or whether or not tax avoidance motivated them, must be disregarded.

The judgment is affirmed.

Thompson, J., and Schottky, J. pro tem., concurred.