[Civ. No. 21206. Third Dist. March 13, 1984.]

DENNIS L. DUFFY, Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, Edward P. Hollingshead and Derry L. Knight, Deputy Attorneys General, for Defendant and Appellant.

Lobner & Bull, Philip D. Minter and Thomas R. Lincoln for Plaintiff and Respondent.

OPINION

SIMS, J.—In this case we hold that the State Board of Equalization (Board) properly collected sales tax on amounts received by a tailor for alterations to "new clothing" (meaning clothing not previously worn except for trying on or fitting) supplied by customers even though the clothing had been previously purchased at retail establishments other than the tailor's shop.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff operates dry cleaning and tailoring establishments in Sacramento. In 1978 the Board audited plaintiff's establishments and found that plaintiff owed state sales tax in the amount of $2,000.75. This tax was assessed upon amounts received by plaintiff for initial alterations of garments furnished by his customers but never worn except for trying on or fitting, an amount estimated by the Board to be 20 percent of total receipts from plaintiff's alterations. Claiming he had maintained no records of the actual volume of his initial alterations, plaintiff refused to furnish any such records to the Board and refused to cooperate with the Board in a test to develop a more precise estimate.

The Board based its assessment of tax on Revenue and Taxation Code section 6006, subdivision (b)[1] and on Regulation 1524[2] which declares charges for alterations to "new clothing" to be taxable.

---

[1]Subdivisions (a) and (b) of Revenue and Taxation Code section 6006 provide: "'Sale' means and includes:

"(a) Any transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration. 'Transfer of possession,' includes only transactions found by the board to be in lieu of a transfer of title, exchange, or barter.

"(b) The producing, fabricating, processing, printing, or imprinting of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the producing, fabricating, processing, printing, or imprinting."

All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[2]Regulation 1524 (Cal. Admin. Code, tit. 18, § 1524) provides in relevant part: "(a) **In General.** Tax applies to the gross receipts from retail sales (i.e., sales to consumers) by manufacturers of tangible personal property the sale of which is not otherwise exempted. *The measure of the tax is the gross receipts of,* or sales price charged by, *the manufacturer, from which no deduction may be taken by the manufacturer on account of* the cost of the raw materials or other components purchased, or *labor or service costs of any step in the manufacturing process, including work performed to fit the customer's specific requirements, whether or not performed at the customer's specific request, or any other services that are*

Plaintiff petitioned the Board for a redetermination of tax, which was ultimately denied. Plaintiff then paid the tax and petitioned the Board for a refund. The Board denied the petition. Plaintiff then filed a complaint for refund of the tax in superior court.

In ruling on cross-motions for summary judgment, the trial court found, inter alia, that "the term 'new' clothing as used in Regulation 1524(b)(1)(B), is defined neither in the [Revenue and Taxation] Code nor the Regulation. The definition applied by the [Board] ['never worn except for trying on or fitting'] is a 'staff interpretation' of the subject regulation and was not readily available to plaintiff from any statutory or regulatory source at the time the transactions involved herein occurred. Thus, plaintiff could have had no means of ascertaining whether a transaction involved 'new' clothing even exercising complete faith and reasonable care."

The trial court opined that due process requires that the meaning of statutes be definite and certain and granted plaintiff's motion for summary judgment. The Board's cross-motion for summary judgment was denied.

On appeal the Board contends: (1) the trial court lacked jurisdiction to decide the case since plaintiff failed to exhaust his administrative remedies, and (2) the applicable statutes and regulations require that plaintiff pay tax on alterations to "new clothing" and the trial court erred in concluding that "new clothing" needed to be further defined by regulation. We agree with the Board's second contention and shall reverse.

DISCUSSION

I

██ The Board first contends that plaintiff failed to exhaust his administrative remedies, thus depriving the trial court of jurisdiction to decide the matter. The Board points to plaintiff's refusal to provide business records to the Board. The Board further suggests that plaintiff had a duty to coop-

---

*a part of the sale.* In addition, no deduction may be taken on account of interest paid, losses or any other expense. [¶] (b) **Particular Applications.** [¶] (1) **Alterations to New Clothing for Men, Women and Children.** [¶] (A) **Definition of Alteration.** [¶] *'Alteration,' as herein used, means and includes any work performed upon new clothing to meet the requirements of a customer,* whether the work involves the addition of material to the garment, the removal of material from the garment, the rearranging or restyling of the garment, or any other change therein. [¶] (B) **Application of Tax.** *Charges for alterations to new clothing are subject to tax.* It is immaterial whether the charges for the alterations are separately stated or are included in the price of the garment. *It also is immaterial whether the alterations are performed by the seller of the garment or by another person.* (Effective October 1, 1970, with respect to alterations of women's clothing.)" (Italics added.)

erate with it in conducting a test to determine what percentage of plaintiff's customers requested tailoring work consisting of alterations to "new clothing." The Board suggests the results of such a test could have provided a more precise estimate of plaintiff's sales tax liability than the 20 percent figure ultimately used.

■ Failure to exhaust administrative remedies before the Board is a jurisdictional procedural defect which bars court action contesting imposition of tax. (*Aronoff* v. *Franchise Tax Bd.* (1963) 60 Cal.2d 177, 180-181 [32 Cal.Rptr. 1, 383 P.2d 409]; *People* v. *West Publishing Co.* (1950) 35 Cal.2d 80, 88 [216 P.2d 441]; *United States Steel Corp.* v. *Franchise Tax Board* (1983) 144 Cal.App.3d 473, 479-480 [192 Cal.Rptr. 677]; *Barnes* v. *State Bd. of Equalization* (1981) 118 Cal.App.3d 994, 1001 [173 Cal.Rptr. 742]; see 2 Cal.Jur.3d, Administrative Law, § 262, pp. 506-510.) ■ The purpose of the exhaustion doctrine is to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the desired relief. (*Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533]; 2 Cal.Jur.3d, *op. cit. supra,* Administrative Law, § 263, pp. 510-511.)

■ In the instant case, plaintiff tendered to the Board his contentions that (a) he is not a producer or fabricator who engages in "retail sales" of new clothing, and (b) Regulation 1524 does not tell him with sufficient particularity what "new" clothing is, so he is unable reasonably to comply with the tax laws.

These contentions do not depend upon the resolution of any disputed facts before the Board; in essence, they represent distilled contentions of law unmuddied by evidentiary conflicts. For example, a test measuring the volume of plaintiff's business would in no way be relevant to plaintiff's contention that none of such business is taxable.

The Board was aware of these contentions and denied them. Since these wholly legal contentions were tendered to the Board and ruled on, the purpose of administrative review of these contentions was satisfied.[3] (See *City*

---

[3] Since we conclude plaintiff sufficiently tendered his claim of unconstitutional vagueness of the Board's regulation to the Board, we do not consider whether he was required to do so. Different points of view are available on the question whether a litigant must tender a claim of unconstitutionality of a *statute* to an administrative agency. (See *Southern Pac. Transportation Co.* v. *Public Utilities Com.* (1976) 18 Cal.3d 308, 315-321 [134 Cal.Rptr. 189, 556 P.2d 289], concurring & dissenting opn. of Moss, J.; *People* v. *West Publishing Co., supra,* 35 Cal.2d at p. 88; compare *State of California* v. *Superior Court (Veta)* (1974) 12 Cal.3d 237, 250-251 [115 Cal.Rptr. 497, 524 P.2d 1281]; see generally, *Hand* v. *Board of Examiners* (1977) 66 Cal.App.3d 605, 617-620 [136 Cal.Rptr. 187].) While we deal here with a constitutional challenge to a regulation promulgated by the Board itself, not with a statute enacted by the Legislature, we have no occasion to address the boundaries of the duty of a litigant to tender such a challenge to the Board, because here plaintiff did so.

*of Los Angeles* v. *Superior Court* (1973) 8 Cal.3d 723, 731 [106 Cal.Rptr. 15, 505 P.2d 207].) However, as we point out in part IV, *post,* plaintiff's failure to cooperate with the Board bars other contentions that *do* depend on a resolution of disputed facts.

We therefore turn to plaintiff's assertion he is not subject to tax on alterations to clothing brought to him by customers who have previously purchased the clothing elsewhere.

## II

## A

We start with an overview of the taxing statutes themselves.

Revenue and Taxation Code section 6006, subdivision (a) defines, as a "sale," "Any transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration. . . ." (See fn. 1, *ante.*) Thus, when one buys a completely fabricated item of tangible personal property (hereafter "product") at retail, such as a lawnmower, a taxable "sale" occurs under subdivision (a) of section 6006. The sales tax is calculated on the retail sales price of the product, title to which is delivered to the purchaser. (§§ 6011, 6051.) The retail price, in turn, reflects the value of materials and labor incorporated in the finished product. As we pointed out in *King* v. *State Bd. of Equalization* (1972) 22 Cal.App.3d 1006 at page 1012 [99 Cal.Rptr. 802], "A tangible article sold at retail is an amalgam of values created by material and services."

We all know, of course, that the fabrication of a product, ultimately purchased by a consumer, is a *process* most easily visualized, perhaps, on an assembly line. Where the process of fabrication is complete before the product is first sold at retail, there is no problem in recognizing a finished product on which sales tax will be imposed. Thus, where the hardware store sells an assembled lawnmower, tax is imposed on the sale and, presumably, nobody complains.

Problems arise, however, where the process of fabrication is arguably not complete at the time of the initial sale at retail. An obvious example would be where the process of fabrication of a lawnmower was accomplished not by an assembly line but rather by three stores located next to each other on the same street. One store sold a consumer a lawnmower body, another store sold a consumer a lawnmower engine and the third store mounted the engine on the body at the consumer's request. Is sales tax imposed on the

third store for the labor required to put the body and motor together even though no change of title has occurred under subdivision (a) of section 6006?

Given the foregoing hypothetical, it requires little imagination to perceive the potential for disparate tax treatment of businesses that sell completed products and of businesses that complete the fabrication of a product at the request of a consumer who supplies materials. Thus, absent a tax on fabrication services, consumers would be taxed differently on their purchase of the same product, depending on the way the fabrication of the product was organized. In *King* v. *State Bd. of Equalization, supra,* 22 Cal.App.3d 643, we said,[4] "The economic burden of the sales tax might be evaded by a consumer who furnished components to an entrepreneur who supplied nothing but services to fabricate these components into the desired end product. Subdivision (b) of section 6006 was designed to forestall that evasion." (22 Cal.App.3d at p. 1012, fn. omitted.) Subdivision (b) of section 6006 defines "sale" to include, "The producing [or] fabricating . . . of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the producing [or] fabricating . . . ." (See fn. 1, *ante.*)

With this overview in mind, we turn to plaintiff's specific arguments.

B

Plaintiff first contends he is not subject to tax under subdivision (b) of section 6006 because the process of altering clothing does not constitute "producing," "fabricating," or "processing" within the meaning of the statute. Thus, plaintiff argues he "makes changes in clothing by cutting it and re-sewing it into slightly different shapes or lengths. He does not, in the questioned transactions remake the garments into a different type of garment. He does not, for example, change capes into dresses, pants into coats, shirts into pants, etc."

---

[4]Sales tax is imposed upon and collectible from a retailer. (§ 6051) When *King* was decided in 1972, section 6052 provided that sales tax "shall be collected by the retailer from the consumer in so far as it can be done." Section 6502 was repealed in 1978. (Stats. 1978, ch. 1211, § 4, p. 3922.) However, as we all know, retailers commonly collect sales tax from consumers. Civil Code section 1656.1 creates a rebuttable presumption that sales tax is included in the retail price of a product. *King's* analysis is therefore still valid notwithstanding the repeal of section 6052.

The problem with plaintiff's argument is that it runs head on into formal regulations and published rulings of the Board. Thus, Regulation 1526[5] provides in pertinent part, "Producing, fabricating, and processing include any operation . . . which is a step in a process or series of operations resulting in the creation or production of tangible personal property. The terms do not include operations . . . which constitute merely the repair or reconditioning of tangible personal property to refit it for the use for which it was originally produced." In Regulation 1524 (see fn. 2, *ante*), the Board has concluded that " 'Alteration,' as herein used, means and includes any work performed upon new clothing to meet the requirements of a customer. . . . [¶] . . . Charges for alterations to new clothing are subject to tax."

These regulations clearly state that charges for alterations to new clothing, undertaken to meet the needs of a customer, are subject to tax. ██ "The *Legislature has delegated to the Board the duty of enforcing the sales tax law, and the authority to prescribe and adopt rules and regulations.* (Rev. & Tax. Code, §§ 7051, 7052.) [¶] *Such delegation is proper even though it confers some degree of discretion on the administrative body. So long as that discretion is executed within the scope of the controlling statute, it will not be disturbed by the courts.* [Citations.]" (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1020 [106 Cal.Rptr. 867].) Where the Board has promulgated a formal regulation interpreting a statute within the intent of the Legislature, the Board's regulation may be overturned only if shown to be arbitrary, capricious or without rational basis. (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 92 [130 Cal.Rptr. 321, 550 P.2d 593].)

Subdivision (b) of section 6006 clearly intends to impose tax on the "producing" or "fabricating" of a product in the circumstances specified by the statute. The Board's regulations simply define work or services to be included in "producing" or "fabricating."[6] Put somewhat differently, the

---

[5]Regulation 1526 (Cal.Admin. Code, tit. 18, § 1526) provides: "(a) **In General.** Tax applies to charges for producing, fabricating, processing, printing, or imprinting of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the producing, fabricating, processing, printing or imprinting. [¶] (b) **Operations Included—Repairing and Reconditioning Distinguished.** *Producing, fabricating, and processing include any operation* which results in the creation or production of tangible personal property or *which is a step in a process or series of operations resulting in the creation or production of tangible personal property. The terms do not include operations* which do not result in the creation or production of tangible personal property or which do not constitute a step in a process or series of operations resulting in the creation or production of tangible personal property, but *which constitute merely the repair or reconditioning of tangible personal property to refit it for the use for which it was originally produced.*" (Italics added.)

[6]It is immaterial that Regulation 1524 is couched in terms of "manufacturing" whereas subdivision (b) of section 6006 speaks of "producing" or "fabricating." For purposes of defining whether alterations to new clothing are a part of the process of fabrication, the terms "manufacturing" and "fabricating" are functionally synonymous.

Board has defined the point at which the process of fabrication of a product comes to an end. In essence, the Board has taken the position that production or fabrication of a product is not complete until the purchaser has used the product for its intended purpose. Consequently, if changes are made to the product to make it suitable to the purchaser before the product is used, those changes constitute a part of the process of fabrication. Plaintiff has not shown, nor are we aware of, how the Board's regulations, which include alterations to new clothing within the process of fabrication, are arbitrary, capricious, or without rational basis.

Moreover, over the years, the Board has issued numerous published rulings on the question of when alterations to a product, necessary to accommodate a consumer, constitute a part of the product's fabrication or production. Some of these rulings, collected from the Board's current Business Taxes Law Guide, are set forth in Appendix A, *post*. The rulings uniformly conclude tax is due on charges for alterations to unused products necessary to make the products useful to consumers. ■ Assuming without deciding that these published rulings constitute merely the Board's interpretation of its regulations, the rulings are still entitled to great weight. (*Culligan Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d at p. 93, followed in *Simplicity Pattern Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 900, 905 [167 Cal.Rptr. 366, 615 P.2d 555].)

■ The Board properly concluded that charges for alterations to new clothing, necessary to make the clothing fit a customer, constituted a step in the "producing" or "fabricating" of a product and were therefore taxable as "sales" pursuant to subdivision (b) of section 6006.

C

Plaintiff next argues he is not subject to tax under subdivision (b) of section 6006 because he supplied the thread required to make the alterations. He argues the statute requires a consumer to supply all materials used in any producing, fabricating or processing.

However, subdivision (b) of section 6006 does not explicitly require a consumer to supply *all* materials used in production or fabrication, and we will not so construe the statute. ■ "It is a cardinal rule of construction that statutes should be given a reasonable interpretation which accords with the apparent intent of the Legislature. [Citations.]" (*Cory* v. *Golden State Bank* (1979) 95 Cal.App.3d 360, 367 [157 Cal.Rptr. 538].) ■ As we have noted, the intent of subdivision (b) of section 6006 is to equalize the imposition of sales tax on those who sell completed products and on those who fabricate completed products for a consumer who supplies materials

for fabrication. That intent would be frustrated by a construction of the statute that effectively excluded from tax those who performed such fabrication services but who furnished common fabrication materials with insignificant economic value such as welding flux, nails, or, in this case, thread.

██ For present purposes it is sufficient to hold that one who is otherwise subject to tax under subdivision (b) of section 6006 does not gain an exclusion from the statute by furnishing economically insignificant materials necessary to assemble, join, or hold together (in the form of a completed product) the material supplied by a consumer.[7]

## D

██ We next address plaintiff's contention that a transfer of title to tangible personal property is necessary to constitute a taxable "sale."

Plaintiff argues that under subdivision (a) of section 6006 tax can be imposed only where a seller delivers title to tangible personal property to another. Consequently, he contends that since no transfer of title occurs when he alters clothing, no tax is due. We conclude a transfer of title is not necessary to accomplish a "sale" under subdivision (b) of section 6006.

Subdivision (b) of the statute does not expressly require that there be a transfer of title from "seller" to another in order for tax to be payable. (See fn. 1, *ante.*) As *King* v. *State Bd. of Equalization, supra,* makes clear, the tax contemplated by subdivision (b) of section 6006 is a tax on the value of labor and services required to fabricate tangible personal property from materials furnished by the consumer. (*King, supra,* 22 Cal.App.3d at p. 1012; see also *A. S. Schulman Electric Co.* v. *State Bd. of Equalization*

---

[7] In *Banken* v. *State Board of Equalization* (1947) 79 Cal.App.2d 572 [180 P.2d 400], we held that sales tax was properly imposed under section 6006 on a business specializing in the dyeing of fabrics. The business dyed cloth previously purchased and brought to it by movie studios. Although the issue now raised by plaintiff was not raised in *Banken,* and therefore not specifically discussed, there is no suggestion that the movie studios furnished the commercial dyeing company with the dyes used on the fabrics.

We also note that where a fabricator, using his own materials of significant economic value, makes an item of tangible personal property at the special request of a consumer, the charge for fabrication will ordinarily be subject to tax pursuant to subdivision (f) of section 6006, which defines as a taxable sale: "A transfer for a consideration of the title or possession of tangible personal property which has been produced, fabricated, or printed to the special order of the customer, or of any publication." We can therefore envision situations where both the customer and the fabricator supply materials of significant economic value for fabrication, so that tax on the charge for fabrication would be properly assessed under both subdivision (b) and subdivision (f) of section 6006. However, where, as here, the fabricator supplies materials of insignificant value, and where "title" or "possession" to the materials (here, thread) is not an important ingredient of the economic transaction, we believe tax is properly assessed exclusively under subdivision (b) of section 6006.

(1975) 49 Cal.App.3d 180, 182 [122 Cal.Rptr. 278].) A seller does not ordinarily transfer "title" to labor or services.[8]

Moreover, more than 35 years ago, in *Banken v. State Board of Equalization, supra,* 79 Cal.App.2d 572 this court construed subdivision (b) of section 6006 (then codified as subdivision (c)), as making taxable the dyeing of fabrics provided by the consumer to the dyeing company where no transfer of title occurred. (P. 573.) There, film studios purchased fabrics in bulk and sent them to the taxpayer for dyeing as their needs arose. (*Ibid.*) We gave then subdivision (c) a literal reading, saying that the sales tax applied "to all transactions" which fall within the subdivision's terms. (P. 577.) Dyeing of fabric previously purchased was found to be taxable since it was a step in the completion of tangible personal property, i.e., dyed fabric. (*Ibid.*)

We hold a transfer of title to tangible personal property is not a necessary ingredient of a "sale" under subdivision (b) of section 6006.

### E

 Plaintiff next contends he cannot be taxed on alterations to clothing previously purchased at retail.

If a customer buys a new suit at a retail establishment, and the retailer alters it to fit the customer, the cost of the alterations is clearly subject to tax pursuant to Regulation 1524 which provides that "Charges for alterations to new clothing are subject to tax." (See fn. 2, *ante.*) Regulation 1524 states further, "It is also immaterial whether the alterations are performed by the seller of the garment or by another person."

The Board's interpretation properly identified plaintiff as "another person" under the regulation. A contrary conclusion would result in the disparate tax treatment of those who have their new clothes altered in the store where they buy them and those who take their new clothes to an outside tailor, such as plaintiff. That result would frustrate the fundamental purpose

---

[8]Plaintiff contends sections 6011 and 6012 require that *tangible personal property* be sold, so that his services, even if used to fabricate a product, cannot be taxed. Subdivision (a) of section 6011 provides in pertinent part: "'Sales Price' means the total amount for which tangible personal property is sold or leased or rented . . . ." Subdivision (a) of section 6012 provides in pertinent part: "'Gross receipts' mean the total amount of the sale or lease or rental price, as the case may be, of the retail sales of retailers . . . ." Plaintiff's argument overlooks the fact that subdivision (b) of section 6006 *defines* as a "sale" "The producing, fabricating, processing, printing, or imprinting of tangible personal property for a consideration . . . ." Consequently, by definition, tangible personal property is "sold" when work prescribed by subdivision (b) of section 6006 is done on it for a consideration.

of subdivision (b) of section 6006 by unfairly imposing tax on the alteration labor of the initial retailer but not on the alteration labor of another. (See *King* v. *State Bd. of Equalization, supra,* 22 Cal.App.3d at pp. 1012-1013.)[9] Moreover, as we have noted, in *Banken* v. *State Board of Equalization, supra,* 79 Cal.App.2d at page 574, we rejected a nearly identical argument and upheld imposition of tax on amounts received by a company for the dyeing of fabrics supplied by customers who had purchased them at retail elsewhere.

Giving the Board's interpretation of its regulations the weight it deserves (*Culligan Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d at p. 93), we cannot conclude it is erroneous.

The Board properly imposed tax on amounts collected by plaintiff for alterations to new clothing even though the clothing had been previously sold at retail by another business establishment. (§ 6006, subd. (b).)[10]

### III

Plaintiff next contends the words "new clothing" in Regulation 1524 (see fn. 2, *ante.*) are unconstitutionally vague, as the trial court found.

### A

At the outset, we confess some uncertainty as to whether plaintiff has an interest sufficient to confer standing to attack Regulation 1524 on vagueness grounds.

In *Goldin* v. *Public Utilities Commission* (1979) 23 Cal.3d 638 [592 P.2d 289] the court considered a constitutional challenge to rule 31 of the Public Utilities Commission (PUC), adopted in 1966. (P. 646, fn. 1.) Rule 31

---

[9]The Board's interpretation is also consistent with Regulation 1526 (see fn. 5, *ante*), which distinguishes generally between production or fabrication "which is a step in a process or series of operations resulting in the creation or production of tangible personal property," on the one hand, and "repair or reconditioning," on the other.

[10]Following oral argument in this matter defendant called our attention to new Revenue and Taxation Code section 6018.6, added by Statutes 1983, chapter 605, which took effect August 31, 1983. This section provides that clothes cleaning or clothes dyeing establishments which receive no more than 20 per cent of their gross receipts from the alteration of garments need not charge sales tax for these alterations. The statute does not differentiate between "new" and "used" clothing, nor between fabrication and reconditioning labor.

We vacated our submission of this matter in order to take note of this enactment; we infer from it, however, no comment by the Legislature on the state of prior law. Our conclusion is, instead, derived exclusively from the law as it existed at the time of the taxable events herein. Whether section 6018.6 makes wholly new law, or prospectively alters the old, seems wholly immaterial at this juncture. The new statute does not influence our decision.

defined the circumstances in which a communications utility could refuse to provide telephone service, or could disconnect the same, when the utility was presented with a "writing," signed by a magistrate, finding that probable cause existed for believing telephone service was or would be used unlawfully. (P. 646, fn. 2.)

Petitioner Goldin's phone service was disconnected by order of the PUC, following hearings, when the PUC found petitioner's telephone had been used to solicit acts of prostitution. (P. 648.) The Supreme Court issued a writ of review to examine rule 31 as applied to Goldin. (P. 649.)

The court refused to entertain Goldin's challenge to rule 31 based on allegedly unconstitutional vagueness. (P. 659.) The court reasoned, first, that Goldin had used his phone to solicit acts of prostitution, so that " '[E]ven if the outermost boundaries of [the regulation] may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the "hard core" of [its] proscriptions . . . .' " (*Goldin v. Public Utilities Commission, supra,* 23 Cal.3d at p. 659, quoting *Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 608 [37 L.Ed.2d 830, 837-838, 93 S.Ct. 2908].)

In a dual holding the court also ruled that, since violation of rule 31 resulted in no criminal penalties, Goldin had no standing to attack the rule on vagueness grounds. In the words of the court, "Although enactments outside the criminal area have occasionally been subjected to scrutiny on grounds of vagueness—especially in cases involving the right to practice a recognized profession (see, e.g., *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 220-233 [82 Cal.Rptr. 175, 461 P.2d 375]; *Hall* v. *Bureau of Employment Agencies* (1976) 64 Cal.App.3d 482, 490-495 [138 Cal.Rptr. 725]; *Goldberg* v. *Barger* (1974) 37 Cal.App.3d 987, 991 [112 Cal.Rptr. 827]; *McMurtry* v. *State Board of Medical Examiners* (1960) 180 Cal.App.2d 760, 766-773 [4 Cal.Rptr. 910]), or the exercise of other fundamental rights (see *Orloff* v. *Los Angeles Turf Club* (1951) 36 Cal.2d 734, 739-742 [227 P.2d 449]; *Perez* v. *Sharp* (1948) 32 Cal.2d 711, 728-732 [198 P.2d 17])—we have normally limited such examination to situations in which First Amendment rights have been at stake (see *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 661-663 [97 Cal.Rptr. 320, 488 P.2d 648]; *Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860, 866 [94 Cal.Rptr. 777, 484 P.2d 945]; *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 690-697 [68 Cal.Rptr. 721, 441 P.2d 281]; but see *Broadrick* v. *Oklahoma, supra,* 413 U.S. 601, 608 [37 L.Ed.2d 830, 837]; and cf. *Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 72-73 [101 Cal.Rptr. 768, 496 P.2d 840]; *Katz* v. *Department of Motor Vehicles* (1973) 32 Cal.App.3d 679, 684 [108 Cal.Rptr. 424]). In the circumstances of the

instant case, where neither the protections of the First Amendment nor any other fundamental right of similar stature is directly involved, we do not deem such an examination appropriate." (*Goldin* v. *Public Utilities Commission, supra,* 23 Cal.3d at p. 659.)

In the instant case for refund of tax, plaintiff may not subject the applicable regulation to the review afforded a penal statute. "Questions as to the interpretation of a penal statute should not be addressed in a case litigated under the administrative law." (*Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 366, fn. 12 [185 Cal.Rptr. 453, 650 P.2d 328].) Nor does Regulation 1524, challenged here, affect speech or other fundamental rights.[11] Consequently, under *Goldin,* Regulation 1524 is not the sort of enactment that may be challenged for unconstitutional vagueness.

More recently, however, in *Ford Dealers Assn.* v. *Department of Motor Vehicles, supra,* 32 Cal.3d 347, the court, without mentioning *Goldin,* entertained and rejected a vagueness challenge to two regulations promulgated by the Department of Motor Vehicles concerning the advertising of vehicles for sale.[12] *Ford Dealers* may be distinguishable from *Goldin* on the ground that *Ford Dealers* implicated rights of free speech, although the court specifically rejected the dealers' argument that the regulations were subject to strict construction, reasoning, "Because regulations governing false and misleading advertising are directed only at unlawful business practices, standard First Amendment cases are not controlling. [Citation.]" (*Ford Dealers, supra,* 32 Cal.3d at p. 366, fn. 12.)

In this case, we need not delineate the boundary between those rules or regulations that are subject to judicial review for vagueness and those that

---

[11]As examples of "fundamental rights," *Goldin* cites *Orloff* v. *Los Angeles Turf Club* (1951) 36 Cal.2d 734 [227 P.2d 449] and *Perez* v. *Sharp* (1948) 32 Cal.2d 711 [198 P.2d 17]. (*Goldin* v. *Public Utilities Commission, supra,* 23 Cal.3d at p. 659.) *Orloff* involved exclusion of a citizen from a public racetrack on the ground he was a person of immoral character. (*Orloff, supra,* 36 Cal.2d at pp. 739-740.) *Perez* involved a challenge to former sections 60 and 69 of the Civil Code, which respectively made interracial marriages illegal and prohibited the issuance of a marriage license for them. (*Perez, supra,* 32 Cal.2d at pp. 728-731.) These cases make clear that *Goldin* used the term "fundamental rights" in *the sense of a personal right of association. Payment of sales tax does not involve such a* personal, fundamental right.

[12]The regulations at issue are as follows: " '403.00 Advertisements. Any advertised statements, representations, or offers made in connection with the sale or attempted sale of any vehicle(s) shall be clearly set forth, and based on facts and shall be subject to these regulations and the Vehicle Code.' (Cal. Admin. Code, tit. 13, § 403.00.) [¶] . . . '404.09 Qualifying Statements. Qualifying statements used in connection with vehicle advertisements, including the qualifying statements required by this article, shall be large enough and displayed for a sufficient period of time to enable the average reader or viewer to comprehend such statements.' (Cal. Admin. Code, tit. 13, § 404.09.)" (*Ford Dealers Assn.* v. *Department of Motor Vehicles, supra,* 32 Cal.3d at pp. 365-366.)

are not. ▇▇▇ Assuming, arguendo, Regulation 1524 is subject to review for vagueness, it clearly passes muster under traditional tests.

▇▇ "Initially, it is important to note," the court in *Ford Dealers* remarked, "that when an administrative regulation is challenged the standard of constitutional vagueness is less strict than when a criminal law is attacked. 'In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed.' (*Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156, 162 [31 L.Ed.2d 110, 115-116, 92 S.Ct. 839]; *Winters* v. *New York* (1948) 333 U.S. 507, 515 [92 L.Ed. 840, 849, 68 S.Ct. 665] 'The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement.'].) (*Ford Dealers, supra,* 32 Cal.3d at p. 366, fn. omitted.)

We follow *Ford Dealers* in judging the vagueness of Regulation 1524 according to rules applicable to civil statutes. ▇▇▇ "It is true that '[c]ivil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts. . . .' (*Morrison* v. *State Board of Education,* 1 Cal.3d 214, 231 [82 Cal.Rptr. 175, 461 P.2d 375] and authorities there cited; *Orloff* v. *Los Angeles Turf Club,* 36 Cal.2d 734, 739 [227 P.2d 449].) However, ' "[r]easonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable ana practical construction can be given its language." [Citation.] It will be upheld if its terms may be made reasonably certain by reference to other definable sources.' (*American Civil Liberties Union* v. *Board of Education,* 59 Cal.2d 203, 218 [28 Cal.Rptr. 700, 379 P.2d 4]; *People* v. *Victor,* 62 Cal.2d 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391].)" (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 405 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) ▇▇▇ To be valid, a tax statute must prescribe a standard sufficiently definite to be understandable to the average person who desires to comply with it. (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization, supra,* 30 Cal.App.3d at p. 1020.)

▇▇▇ Plaintiff's essential contention is that Regulation 1524 is fatally vague because he could not know that clothing previously purchased somewhere else would be "new clothing." However, Regulation 1524 on its face stated tax was imposed on alterations to new clothing regardless of "whether the alterations are performed by the seller of the garment or by another person." (See fn. 2, *ante.*) Moreover, various published rulings of the Board indicated that tax was due on labor or services necessary to make a new product useful to a consumer, even where work was performed on an item supplied by a customer. (See Appen. A, *post,* esp. §§ 435.0470,

435.1700.) Finally, in *Banken v. State Board of Equalization, supra,* 79 Cal.App.2d at pages 573-574, decided more than three decades before plaintiff's challenge, we made it clear that one who performed fabrication services on an unused product was liable for tax under section 6006, even though the product on which services were performed had been previously purchased at retail. ▮▮▮ In evaluating his liability for tax under section 6006, plaintiff was obligated to read the statute in light of *Banken,* since "if the statute has been judicially construed, such construction of the statutory words become part of the statute 'as if it had been so amended by the legislature.' [Citations.]" (*In re Davis* (1966) 242 Cal.App.2d 645, 653 [51 Cal.Rptr. 702], quoting *Cramp v. Board of Public Instruction* (1961) 368 U.S. 278, 285 [7 L.Ed.2d 285, 291, 82 Cal.Rptr. 275].)

▮▮▮ Regulation 1524, the Board's rulings, and *Banken* put plaintiff on reasonable notice that he would be liable for sales tax, under subdivision (b) of section 6006, on amounts collected for alterations to clothing previously purchased somewhere else but not worn except for trying on or fitting.[13] Regulation 1524 is not void on vagueness grounds (see *Ford Dealers Assn. v. Department of Motor Vehicles, supra,* 32 Cal.3d at p. 369) and tax was properly collected.

## IV

▮▮▮ Finally, plaintiff contends that, even if the Board's definition of "new clothing" survives a vagueness challenge, it is unfair to apply that definition to him because he has no practical way to ascertain what clothes are "new" when they are brought into his shop.

We conclude this contention is barred by plaintiff's failure to exhaust his administrative remedies before the Board. Plaintiff has consistently refused to cooperate with the Board in arriving at a fair calculation of tax due. He has, for example, failed or refused to produce records or to participate in tests for arriving at a proper amount of tax. His failure to cooperate with the Board deprived the Board of its opportunity to refine its definition of "new clothing" on a case-by-case basis. (See *Ford Dealers Assn. v. Department of Motor Vehicles, supra,* 32 Cal.3d at p. 367.)

Moreover, there is nothing unfair about applying the exhaustion requirement to plaintiff when he complains that, as a practical matter, he cannot tell what "new clothing" is. An unimpeached declaration by plaintiff's for-

---

[13]Since plaintiff had adequate notice of his tax liability from these published sources, it is immaterial that the Board's interpretation of Regulation 1524 was unpublished. Consequently, we do not address the question, posed by the decision of the trial court, whether the Board has any obligation to publish its staff interpretations of its regulations.

mer tailor shop manager, submitted by the Board in support of its motion for summary judgment, states that plaintiff's customers brought into the store, for alteration, pants without hems or cuffs and other articles of clothing with store tags or labels still attached to the outside of waistbands or to coat sleeves. Such items of clothing are "new" by any reasonable construction of the term. Absent an administrative record, we will not presume the Board will administer Regulation 1524 in an unfair manner. (See *Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 421-422 [194 Cal.Rptr. 357, 668 P.2d 664].) Plaintiff's claim that he cannot reasonably identify "new" clothing brought into his store is barred by his failure to exhaust administrative remedies. (*Aronoff* v. *Franchise Tax Bd.*, *supra*, 60 Cal.2d at pp. 180-181; *People* v. *West Publishing Co.*, *supra*, 35 Cal.2d at pp. 88-89; *United States Steel Corp.* v. *Franchise Tax Board*, *supra*, 144 Cal.App.3d at pp. 479-480; *Barnes* v. *State Bd. of Equalization*, *supra*, 118 Cal.App.3d at p. 1001.)

## V

The record demonstrates there is no triable issue of fact remaining in the litigation. Pertinent questions of law have been resolved against plaintiff. Any contentions of plaintiff with respect to the amount of tax owing are barred by his failure to exhaust administrative remedies. On remand, the trial court shall enter summary judgment for the Board. (See *England* v. *Christensen* (1966) 243 Cal.App.2d 413, 435 [52 Cal.Rptr. 402]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 546, p. 4487.)

### DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for the entry of summary judgment in favor of defendant California State Board of Equalization.

Puglia, P. J., and Sparks, J., concurred.

Appendix A
Miscellaneous Published Rulings of the
Board of Equalization Interpreting Regulation 1526
All references are to sections in the
Board's Business Taxes Law Guide (1984).

"435.0420 Shoes. If an additional charge is made for altering men's new shoes by addition of heel inserts, replacing of rubber heels for leather heels or stretching of the shoes, such additional charge would be subject to sales tax. If the shoes are not new, the replacement of worn heels, etc., would be a repair operation. 8/25/66.

"435.0460 Trailer Hitches. If a hitch is built on a new car, it is a completion of manufacture and charges for labor would be taxable as fabrication. Where the hitch is built into a used vehicle it is a sale of the individual pieces and the labor of attaching them would be exempt installation. If the hitch were preassembled, the only exempt labor would be that of attaching the hitch to the car. 5/21/54.

"435.0470 Van Conversions. The following guidelines should be utilized for determining the measure of tax for van conversion work.

"(1) Where a van dealer contracts with the conversion company to transform a new motor van into a house car at the request of the customer, the entire operation is a step or process in fabricating or producing tangible personal property. The dealer's charge to the customer for the conversion work constitutes gross receipts from a sale of tangible personal property.

"(2) Where the customer provides the van conversion company with a new stock van for conversion into a house car the operation is also a step or series of operations resulting in the production of an end item of property desired by the customer and the entire charge made by the van conversion company is includible in gross receipts. A van will be considered to have been purchased for this purpose if the contract for the conversion work is entered into within 60 days of the date the vehicle was first registered with the Department of Motor Vehicles.

"(3) Where the customer provides the van conversion company with a used motor van for conversion the operation constitutes a modification of the existing property. The tax is applicable to the fabrication or production of new parts and equipment or any new parts or equipment sold from inventory but is not applicable to the charge of installing the property sold. For example, the entire charge for constructing a bubble top for the used van would be subject to the tax. However, the charge for installing the new top or any item withdrawn from inventory would not be taxable.

"A charge for the services of rearranging items that were part of the original equipment of the used van, amounts to refitting and would be exempt from the tax. 9/8/77.

"435.0720 Drilling Holes in Bowling Balls. The charge made for drilling holes in a new bowling ball constitutes taxable fabrication labor. Drilling holes in a ball constitutes a step in the manufacturing process of a finished article. 10/27/77.

"435.0760 Engraving of Bronze Panels. The charge an engraver makes a cemetery for the engraving of a bronze panel is a taxable processing charge for a consumer pursuant to Section 6006(b) of the Sales and Use Tax Law. The panel is not actually resold to the "purchaser," who merely acquires a perpetual right to use realty belonging to the cemetery. The tax applies to the first engraving because the panel is essentially new when the engraving takes place. 2/26/52.

"435.0880 Handcarving of Stock of New Gun constitutes taxable processing; not taxable processing if used gun is carved. 6/1/51.

"435.0960 Lacquering new film, charges for, are taxable, while charges for lacquering old worn and scratched film are nontaxable repair charges. 6/13/51.

"435.1080 Mounting Gun Scope. Mounting a scope on a new gun constitutes fabrication and the charges therefor are taxable. Mounting a scope on a customer's used gun constitutes installation labor and the charges therefor are exempt. 7/12/68.

"435.1220 Plating Charges. Charges for chrome, nickel or alumulite plating applied to fittings supplied by customer, constitutes taxable fabrication labor when performed on new personal property, and the sales tax applies to the entire charge.

"435.1500 Shirring of New Drapes, tax applies to labor charges for. 4/25/51.

"435.1520 Ski Bindings. The attachment of bindings to new skis is regarded as taxable fabrication labor. 6/5/68.

"435.1640 Styling of Wigs. Charges for cutting, sizing, styling, and coloring new wigs are includable in the measure of the tax. The exemption in Section 6012 'for labor or services used in installing or applying the property sold' applies only to labor expended in attaching or adapting the purchased property to or for a specified site, in other words, emplacement. However, the charges for restyling of used wigs are exempt. 11/30/66.

"435.1700 Tennis Rackets. Where a person brings into a shop the frame and gut for the original stringing of a tennis racket the sales tax applies to the entire charge made for stringing the racket, even though no additional parts are furnished.

"Where a used racket requires restringing and the customer furnishes the gut which will be used, the labor charges involved constitute exempt repair and reconditioning labor. 2/25/54."