Filed 7/22/14  Sommer v. Brave CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KATHLEEN SOMMER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>GEORGINE F. BRAVE et al.,<br><br>    Defendants and Respondents. | D064015<br><br><br><br>(Super. Ct. No. 37-2009-00099705-<br> CU-PN-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Kevin A.

Enright, Judge.  Affirmed.

Kathleen Sommer, in pro. per., for Plaintiff and Appellant.

Wingert Grebing Brubaker & Juskie, Charles R. Grebing and Deborah S. Dixon

for Defendants and Respondents.

A jury rendered a defense verdict in this legal malpractice action, finding there

was no causation of harm as alleged by plaintiff and appellant Kathleen Sommer, from

the professional conduct of defendant and respondent Georgine F. Brave and her firm,

Brave, Weber & Mack, APC (together, Brave).  Sommer's action for damages alleged

that Brave's representation of Sommer's mother, Gloria Moser (Gloria), in an underlying family law and trust matter shortly before Gloria died, was substandard and improperly reduced Sommer's inheritance. Brave assisted Gloria in filing for legal separation from Gloria's husband, Bill Moser (Moser), and in preparing a quitclaim deed intended to implement Gloria's wishes that Sommer should inherit all of Gloria's 50 percent interest in the condominium in which Gloria and Moser were living (the real property).

In October 2009, Sommer brought this legal malpractice action against Brave, alleging she had fallen below the applicable standard of care in representing Gloria. In 2010, Sommer and Moser took their probate court dispute to mediation and executed a written settlement agreement to resolve their disputes and dismiss the probate court proceedings (the settlement agreement). Moser paid Sommer $250,000 to settle those disputes.

Eventually, Sommer went to jury trial against Brave on the theory that the compensation she had received from Moser in probate court did not include any amount representing her lost 25 percent interest in the real property, and thus the rest of her alleged damage ($115,625) was directly attributable to Brave's negligence in representing Gloria. At trial, the court excluded the settlement agreement from evidence. (Evid. Code, § 1119 [mediation privilege]; all further statutory references are to this code unless noted.) Ultimately, the jury's verdict determined that Sommer had timely filed her action, and Brave had been negligent, but there was no causation of harm to Sommer from that negligence.

2

Sommer argues on appeal that she provided substantial evidence at trial of monetary loss from her expected inheritance, caused by Brave, because the value of Sommer's lost 25 percent interest in the real property was not covered by the settlement agreement as she understood it. She claims that but for certain prejudicial defense attorney misconduct during closing argument, she would have prevailed and obtained such damages against Brave for legal malpractice.

Specifically, Sommer contends that when Brave's attorney referred in closing argument to an admitted exhibit, a letter from probate counsel for Moser responding to demands by probate counsel for Sommer (Exh. No. 82, "the January 2009 Hickman letter"), the attorney did so in a misleading light that knowingly disregarded certain rulings that were issued upon his own motion in limine. That defense motion was addressed to a different exhibit, the settlement agreement, Exhibit No. 108. According to Sommer, the trial court's rulings about the permissible scope of evidence to be presented about the negotiations and terms of the settlement agreement (e.g., its allocation to her different alleged items of damage), were broad enough to forbid such argumentative references to Exhibit No. 82.

However, during those closing arguments, Sommer did not raise any objections nor did she ask for any curative admonition or instruction about the alleged misconduct by Brave's counsel. Sommer has not shown that she acted to preserve her claims, such as by bringing her own motion in limine to further restrict the permissible scope of evidence or any comment by counsel relating to the probate court settlement negotiations and/or the compensation paid by Moser. (See *People v. Morris* (1991) 53 Cal.3d 152, 190

3

(*Morris*) [motion in limine to exclude evidence may constitute a "sufficient manifestation of objection to protect the record on appeal"].)

Even assuming Sommer adequately preserved her arguments about defense attorney misconduct, this was not a case of severe or extreme attorney misconduct. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 794-795 (*Cassim*) ["In addition to objecting, a litigant faced with opposing counsel's misconduct must also 'move for a mistrial or seek a curative admonition' [citation] unless the misconduct is so persistent that an admonition would be inadequate to cure the resulting prejudice."] On the overall record, we have no basis to conclude that Brave's counsel exceeded the scope of permissible argument or commentary upon the admitted exhibits or upon the general topic of the disputes leading to the settlement agreement. The trial court's rulings that limited the admissibility of evidence about the scope and contents of the settlement agreement were appropriate to the history of that document. However, as part of this trial within a trial, the court allowed the jury to hear, to some extent, the participants' testimony about the different positions taken by the parties at various stages of the dispute. The comments and argument made to the jury by defense counsel were accordingly within appropriate bounds and did not undermine the validity of the judgment. We affirm.

FACTUAL AND PROCEDURAL HISTORY

A. Dispute and Gloria's Assets*;* Prior Appeal on Limitations Ruling

Brave previously obtained a grant of summary judgment in her favor in this malpractice action, on the grounds that Sommer's action was barred by the applicable

4

statute of limitations. (Code Civ. Proc., §§ 437c; 340.6.) However, in a prior nonpublished opinion of this court (*Sommer v. Brave* (July 30, 2012, D058476); our prior opinion), we reversed the defense summary judgment and returned the matter to superior court for trial on the merits. We noted that the trial court had not yet reached any of the issues about whether Brave had breached the applicable standard of care through the manner in which she structured the quitclaim deed transaction, or whether there was any proximate causation of injury to Sommer. We expressed no opinion upon those issues.

Over a period of about five weeks in late 2006 through early 2007, Brave carried out Gloria's instructions to file a petition for legal separation and prepare a quitclaim deed affecting title to Gloria's 50 percent interest in the real property where she lived with Moser (stepfather of Sommer). It is not disputed that Gloria intended that Sommer receive her entire interest in the real property, as well as some personal property, by way of Brave's quitclaim deed transaction and a related trust that was prepared by different counsel (Karen M. Ladner; not a party at trial).

After Gloria died, the disputes between Sommer and Moser about ownership of real and personal property continued, and Sommer repeatedly asked Gloria's attorneys about the status of the transfer of her interests. Sommer also communicated in 2007 with Moser's attorney and in 2008 with a friend of Moser, about her ongoing claim to 50 percent ownership of the real property.

In the fall of 2008, Sommer retained her own probate attorney, who corresponded several times with Moser's attorney about Gloria's instructions on Sommer's inheritance. Sommer's probate attorney demanded that Moser comply with Gloria's wishes, including

5

transferring to Sommer a 50 percent interest in the real property. In the January 2009 Hickman letter (Exh. No. 82), Moser's attorney Hickman responded that (a) Moser was not going to accede to any of Sommer's demands, and (b) Moser believed Gloria, Sommer or her relatives had unlawfully taken money and property belonging to him.

In May 2009, Sommer filed a petition to settle Gloria's assets in probate court. She filed this legal malpractice action against Brave in October 2009. After further negotiations between the probate court attorneys, Sommer agreed in April 2010 that she would dismiss her claims in return for $250,000 compensation from Moser. The settlement agreement allowed Sommer to allocate in writing, for her own purposes, the amounts of compensation she had received according to each disputed item (coins, promissory note, real and personal property).

### B. Trial on Legal Malpractice Claims; Jury Verdict

Initially, the trial court ruled upon motions in limine that were brought to identify whether the malpractice issues to be decided were legal or factual in nature. The court held a bench trial, on expert testimony, to decide the legal effect of Brave's quitclaim deed between Gloria and Moser. The court ruled that the effect of the deed was to sever the joint tenancy for the real property, and then to create a 75 percent interest in the real property for Moser and 25 percent interest to Gloria.

Next, the jury was impaneled and opening statements presented. During Sommer's testimony, her counsel offered the January 2009 Hickman letter into evidence and argued that it spoke for itself, with regard to explaining Moser's position during the

6

settlement negotiations.[1]  Sommer claimed that the January 2009 Hickman letter had the effect of finally putting Sommer on notice that Moser was claiming a 75 percent interest in the real property.  Her attorney told the jury that eventually, the settlement agreement concluded the probate matters, and Sommer was now seeking damages from Brave for the 25 percent interest in the property that she did not receive.  The parties stipulated that the current value of 25 percent of the real property was $115,625.

Regarding Sommer's claimed damages, her expert witness examined documents produced by Brave and other attorneys in the probate case, and gave the opinion that Gloria's instructions to Brave were to break the joint tenancy on the real property (achieved) and to enable Gloria to transfer a 50 percent ownership in the property (not achieved).  The manner in which Brave drafted the quitclaim deed was mistaken and Gloria retained only a 25 percent interest in it that was subject to transfer, through her trust that was created at the same time.

In response, attorneys for Brave argued she had not been negligent and had not caused any loss.  Brave testified that she acted according to her instructions or "marching orders" from Gloria, which were to take immediate action to break the joint tenancy, but to leave Moser's name on the title in some way, to avoid further infuriating him.  Brave also presented Hickman's testimony about his recollection of the probate dispute, from Moser's point of view.

---

[1]  Although Sommer inexplicably argues that only one page of Exhibit No. 82 was admitted into evidence, the record instead shows that her counsel examined her about it and then specifically called one of its three pages to the attention of Hickman as a witness.  The exhibit as a whole was admitted without objection or further comment.

When Sommer sought to have the settlement agreement (Exh. No. 108) admitted into evidence, Brave's attorney brought a motion in limine to restrict references to the settlement negotiations and agreement, on the grounds that such mediation communications were privileged under section 1119. The court held discussions on those issues at several points during trial, during testimony of Sommer, Brave, and Hickman. Eventually, the court excluded the settlement agreement on the grounds that it was privileged material that was never filed in the probate court file and Brave was not a party to it.

However, the court gave counsel some leeway to explore Sommer's understanding of the allocation of the settlement compensation, as it affected her damages claims against Brave. Both counsel were told to avoid relitigating the whole probate dispute.

Defense counsel cross-examined Sommer about the language in the settlement agreement, "$250,000 settlement paid over by Moser to Sommer is allocated by Sommer for her own purposes as follows." Sommer testified that when the probate action was settled, this malpractice lawsuit was already pending, and it had some effect upon her decision to settle the probate matters. She received money from Moser and he received the real property. In settlement, Sommer placed the real property interest then received at $120,000 of the settlement funds, and $88,000 as the debt due from Moser to Gloria on his promissory note. $22,000 was identified in the settlement as payment in exchange for coins collected by the couple, some of which she believed were owned by Gloria's trust.

8

Both Sommer and Hickman testified that Moser declined to participate in any allocation (with one exception, that $20,000 was to be paid directly to Sommer's two daughters).

In closing argument, Brave's attorney first argued there had been no breach of the expected duty of care under the circumstances in which Brave was required to act immediately, due to the information Sommer gave her about Gloria's impending death. Also, he pointed out that the problems with the quitclaim deed were apparently not recognized by anyone before the probate action was settled. He also argued that despite the settlement, Sommer had never proved her entitlement to compensation for the coins, or the proceeds of Moser's promissory note, or that Moser had ever agreed to Sommer's allocation of compensation for the items covered by the settlement agreement. Thus, he argued it was unclear whether Sommer had actually been damaged with respect to the value of the real property.

Brave's attorney further argued to the jury that it could consider the contents of the January 2009 Hickman letter (Exh. No. 82), in determining whether a better result would have been reached if Brave had acted differently. He contended that Brave's conduct in preparing the quitclaim deed was not the cause of Sommer's loss in the underlying action, and that the $250,000 compensation she had already received from Moser in the settlement agreement was approximately the value of a 50 percent interest in the real property (i.e., double the $115,625 stipulated amount for a 25 percent interest). He then commented: "I also have to ask you to take into account an issue with respect to--and I don't mean this in a derogatory sense. But look at Mr. Hickman's letter of January 27,

9

2009. We don't need it right now. But spend some time with it, and look at the reasons behind the fact that the claims that are being made by Ms. Sommer under these circumstances are really not valid claims when considering all of the factual related to it [sic]. [¶] *I will leave that reading to you. It is not productive for me to read it to you and talk about it under these circumstances. But I ask that you look at the interplay of this with respect to the question of whether or not there could have been either a better result or different result*." (Italics added.)

Brave's attorney next argued that Sommer should not have been surprised that Moser did not cooperate with Gloria's severance of the joint tenancy, since Sommer was claiming he was breaking promises to her about her expected inheritance rights. Counsel thus contended that Sommer did not take timely action to protect any rights she had, by filing the lawsuit earlier.

At the conclusion of testimony, the jury was instructed about the applicable professional standard of care and about the rules for considering the evidence, and that argument of counsel was not evidence. Ultimately, the jury's verdict found that Sommer's action was timely filed, and that Brave had been negligent in her legal representation of Gloria, but that Brave had not caused Sommer's harm or loss.

### C. Notes on Appellate Record

Sommer filed a timely notice of appeal from the judgment on the verdict. In addition to a minimal clerk's transcript and the reporter's transcript of trial, numerous trial exhibits that were offered or admitted into evidence have been lodged. This includes the January 2009 Hickman letter (Exh. No. 82), as well as a full copy of the settlement

10

agreement, even though it was excluded from evidence (Exh. No. 108). Both parties acknowledge that Sommer was allowed to testify about its contents.

The transmitted exhibits also include a full copy of Exhibit No. 29, Gloria's financial records, even though only a few pages of Exhibit No. 29 were actually admitted into evidence. Sommer nevertheless claims on unspecified grounds that all of it should be considered, which we cannot do. Although Sommer requested that certain points and authorities and related opposition, filed in connection with in limine motions, should be "transmitted" as well, this was not done because they were not "exhibits." (Cal. Rules of Court, rule 8.224(b)(2).) She has not made any augmentation request for that material. (Cal. Rules of Court, rule 8.155(a).)

The record has been augmented to include the transcript of Sommer's February 2013 video deposition, as well as its two exhibits (one of which is another marked, but not admitted, copy of the settlement agreement). However, the record does not show that the jury was given access to that evidence.

## DISCUSSION

Sommer claims that she did not get a fair trial, through no fault of her own. She contends that defense counsel's closing argument egregiously mischaracterized the evidence, by referring to the contents of the January 2009 Hickman letter in a manner that contravened related rulings at trial that excluded the settlement agreement (Exh. No. 108). Those related rulings, she claims, were broad enough to put the parties on notice that the trial court did not intend to allow any evidence or argument about the negotiations leading up to the settlement agreement, such as Moser's initial rejections of

11

her counsel's demands, as described in the Hickman letter. Alternatively, she argues her own trial counsel was not required to raise any objections at trial, to preserve these objections on appeal. (*Cassim, supra*, 33 Cal.4th at pp. 794-795.)

I

*APPLICABLE STANDARDS*

We apply basic guidelines for review. As the appellant, Sommer has the burden of providing an adequate record and of showing that error occurred and that it was prejudicial. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 (*Aguilar*).) Absent an adequate record to demonstrate error, a reviewing court presumes the judgment or order is supported by the evidence. (*In re Angel L.* (2008) 159 Cal.App.4th 1127, 1136-1137.)

"In propria persona litigants are entitled to the same, but no greater, rights than represented litigants and are presumed to know the [procedural and court] rules." (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.) Sommer pursues these appellate claims in propria persona, and we take the appellate record as presented to us, to examine the validity of her claims of prejudicial misconduct of opposing counsel.

The elements of a cause of action for legal malpractice arising from a civil case are "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199-2000.)

12

"In both litigation and transactional malpractice cases, the crucial causation inquiry is *what would have happened* if the defendant attorney had not been negligent. This is so because the very idea of causation necessarily involves comparing historical events to a hypothetical alternative." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1242 (*Viner*); original italics.) There is a "myriad of variables that affect" litigation, as well as settlements of same, all playing into the causation and damages equation. (*Thompson v. Halvonik* (1995) 36 Cal.App.4th 657, 663.) " 'Proof of legal malpractice requires proof not only of negligence by the lawyer but also of causation, a trial within a trial to establish that, but for the lawyer's negligence, the client would have prevailed in the underlying action.' " (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 864.)

II

*STANDARDS FOR EVALUATING EFFECT OF*
*ALLEGED MISCONDUCT OF COUNSEL*

The factors to be evaluated in determining the effect of attorney misconduct, in light of the overall record of trial, include the nature and seriousness of the remarks, the general atmosphere of the trial, the likelihood of prejudicing the jury, and consideration of whether an objection or admonition would have been effective. (*Sabella v. Southern Pac. Co.* (1969) 70 Cal.2d 311, 320-321.) "Generally a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished. [Citations.] The purpose of the rule requiring the making of timely objections is remedial in nature, and seeks to give the court the opportunity to admonish the jury, instruct counsel and forestall the accumulation of

13

prejudice by repeated improprieties, thus avoiding the necessity of a retrial. . . . In the absence of a timely objection the offended party is deemed to have waived the claim of error through his participation in the atmosphere which produced the claim of prejudice." (*Horn v. Atchison, T. & S.F. Ry. Co.* (1964) 61 Cal.2d 602, 610.)

"The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal." (*Morris*, *supra*, 53 Cal.3d 152, 187-188.) Such a ruling or admonition prevents the need for a court to attempt to " 'unring the bell' " and to remove any prejudice from counsel's remarks. (*Ibid.*; *Hyatt v. Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 337 [rulings on motions in limine should avoid the need for any "obviously futile attempt to 'unring the bell' in the event a motion to strike is granted in the proceedings before the jury"].)

The requirements for timely objections to perceived problems with evidence can be disregarded in a proper case, without offending statutory principles: " 'In summary . . . a motion in limine to exclude evidence is a sufficient manifestation of objection to protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context. When such a

14

motion is made and denied, the issue is preserved for appeal." (*Morris, supra,* 53 Cal.3d at p. 190.)[2]

In the exceptional case in which an admonition would not have cured the effect of attorney misconduct committed in front of a jury, a party's failure to request an admonition does not serve to waive appellate rights on the issue. (*Cassim, supra,* 33 Cal.4th 780, 794-795.)

III

*ANALYSIS OF ATTORNEY MISCONDUCT CLAIMS*

A. Testimony and Rulings

This malpractice "trial within a trial" dealt not only with Brave's role in the history of the probate court dispute, but also the timeliness of Sommer's claims. On the disputed statute of limitations issues, Sommer repeatedly referred to the January 2009 Hickman letter as supporting her claim that she did not understand until she received it that she did not have a good claim to a 50 percent interest in the real property. Sommer's counsel did not object when the court admitted it into evidence, nor during the defense closing argument.

---

[2]     Section 353 provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and (b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."

Sommer relies on certain portions of the record as supporting her claim that the trial court's extended colloquy with counsel, and its ruling that excluded the written settlement agreement, should be deemed to additionally foreclose argument by counsel about the January 2009 Hickman letter. When Sommer started to explain during her testimony how the real property factored into the amount of the settlement, the court went into recess and discussed the pending motion in limine with counsel. Defense counsel preliminarily argued the settlement agreement should be excluded under section 1152 (inadmissibility of offers to compromise to show liability). At that time, the court explained that cross-examination was the proper way to examine Sommer's opinions about the settlement amounts (saying, "so have at it"), but it deferred ruling on the admissibility of the settlement agreement.

The court returned to the in limine motion about the settlement agreement during Brave's testimony, and defense counsel additionally argued that the exhibit should be excluded under section 1119, the mediation privilege. The court agreed and excluded the settlement agreement.

While Hickman was testifying on behalf of Brave, he explained that he did not remember the January 2009 letter (Exh. No. 82) that he wrote to Sommer's probate attorney, in which Moser had initially rejected all of Sommer's demands. Hickman did remember that several letters were exchanged between counsel in the probate matter. He generally said that Moser did not specifically allocate anything toward the overall settlement, except for the payments to the two daughters. Sommer's attorney objected to such questioning on the grounds that it was cumulative or prejudicial under section 352,

16

because the Hickman letter spoke for itself with respect to Moser's claims or defenses at the time regarding Sommer's settlement demands.  The court ruled on the objections by stating that Hickman could be cross-examined about his knowledge of the probate disputes, but the court did not want to relitigate the probate settlement, and counsel should not "dive deep."

### B.  Misconduct Arguments; Waiver

Sommer contends that the trial court's rulings, taken as a whole, permitted admissibility of the January 2009 Hickman letter only for some limited purposes (i.e., timing issues and allocation of settlement funds), but not others (Moser's substantive statements about his position in the dispute).  She objects to the way in which defense counsel argued the effect of that letter, in which Hickman reported that Moser was not going to pay Sommer anything, and Moser believed Gloria, Sommer, or their relatives had unlawfully taken money and property belonging to him.  Sommer contends that use of the letter in argument was unduly prejudicial, because no such unlawful takings were ever proved.  She claims that defense counsel exceeded the bounds of proper argument about the evidence, and reversal of the judgment is required.  (*Morris, supra*, 53 Cal.3d at pp. 187-188.)

To preserve Sommer's arguments about the January 2009 Hickman letter, the related Exhibit No. 108 motion in limine had to raise "a specific legal ground for exclusion," that is now being raised on appeal, on the topic of arguable misconduct of defense counsel.  (*Morris, supra*, 53 Cal.3d at p. 190.)  Also, the Exhibit No. 108 motion in limine had to be "directed to a particular, identifiable body of evidence," that was

17

common to Exhibit No. 82 as well. (*Ibid*.) However, Sommer never requested the trial court to instruct the jury to disregard the portion of the January 2009 Hickman letter in which he stated that Moser believed Gloria or Sommer were guilty of taking his property. Sommer did not claim at trial that the letter was not pertinent to the legal issues presented about the overall dispute or the part that Brave played in it. Rather, she sought to have it introduced into evidence, to support her delayed discovery claims.

This record does not support a conclusion that the discussion and rulings on the motion in limine to exclude the settlement agreement (regarding the mediation privilege or hearsay) amounted to, or substituted for, more specific discussion and rulings that would have expressly or impliedly limited the use of the January 2009 Hickman letter in argument. Rather, the two exhibits were treated separately, both during the in limine proceedings and the relevant testimony, with respect to their content and the reasons they were being offered. Sommer has failed to show that the Exhibit No. 108 motion in limine was "made at a time before or during trial when the trial judge can determine the [subject] evidentiary question in its appropriate context." (*Morris, supra*, 53 Cal.3d at p. 190.) In context, different issues were being raised about Sommer's allocation of the settlement funds in 2010, and about the January 2009 Hickman letter as identifying the status of the dispute.

We disagree that Sommer was excused from an obligation to object to any perceived problems with the admissibility of the January 2009 Hickman letter, as a whole, or to defense counsel's argument about it. That letter represented an early stage of the negotiations, and it was used by Sommer for that reason, to support her claim of

18

delayed discovery of her problems with her claim to the real property. She affirmatively argued its effects without seeking any limitations on its use. This is not a case in which an admonition or instruction, even if requested or made, would have been futile and could not have cured any potential prejudice from defense counsel's statements encouraging the jury to consider this admitted evidence. Sommer has essentially waived her right to assert misconduct of counsel occurred when he referred to that letter during argument.

C. Even if Cognizable, Sommer's Claims Lack Merit

Even assuming Sommer did not waive these attorney misconduct arguments, section 353, subdivision (b) requires that a judgment shall not be reversed for any error related to a ruling in limine on an evidentiary matter, unless the reviewing court concludes there was error that resulted in a miscarriage of justice. In view of the overall record, the comments in the January 2009 Hickman letter about the many disputed topics between Sommer and Moser were not unduly emotional or inflammatory, because the jury already knew that their attorneys in the probate court had started negotiating the heated dispute on an adversary basis, and that there were a number of items of Gloria's property involved. (*Sabella v. Southern Pac. Co., supra*, 70 Cal.2d 311, 321.)

For example, Hickman was allowed to testify that Moser wanted $20,000 of the settlement funds to be earmarked for Sommer's daughters, not Sommer, and that was enough to reach settlement of the probate case. The trial court appropriately allowed counsel some leeway to explore the settlement components, which was understandable under the "case within a case" method of dispute resolution. Defense counsel's references in closing argument to the January 2009 Hickman letter, as background about the dispute,

19

did not amount to mischaracterizations of the evidence or to prejudicial new information. The jury was not unduly distracted from focusing on the evidence and legal issues presented about Brave's professional conduct, because the references to the January 2009 Hickman letter did not go far beyond the circumstances already brought into evidence. The trial court had no sua sponte obligation to criticize the defense arguments or to instruct the jury they were improper. (*Cassim, supra*, 33 Cal.4th 780, 794-795.)

Finally, it is not enough for Sommer to argue that substantial evidence existed in Gloria's financial records about the value of the marital assets (only some of which were admitted into evidence), such that her evidence would have supported a judgment for damages in her favor, "but for" the allegedly prejudicial closing argument. Merely because Sommer succeeded in getting some of Gloria's records into evidence does not show that it was Brave's negligence that caused Sommer's problems with her projected inheritance. Instead, there was a "myriad of variables" in the settlement of the probate case, which included the role played by Brave's earlier representation of Gloria. Those circumstances were fully presented to the jury, and the evidence did not require it to make a causation finding favorable to Sommer. (See *Thompson v. Halvonik, supra,* 36 Cal.App.4th 657, 663.) Sommer has not carried her burden of showing that error, harmful or otherwise, is apparent on the face of the record and led to this defense verdict. (*Aguilar, supra,* 21 Cal.4th 121, 132.)

20

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Respondents.


                                                    HUFFMAN, Acting P. J.

WE CONCUR:


        McDONALD, J.


        McINTYRE, J.